WILLIAM J. HURLEY vs. FALL RIVER DAILY HERALD
PUBLISHING COMPANY.

PATRICK GILLAN vs. SAME.

Bristol.   Oct. 29, 1884. — Jan. 9, 1885.   C. ALLEN & COLBURN, JJ.,
absent.

An averment in a declaration for libel, that the alleged libel was published con-
cerning the plaintiff, is sufficient to identify with him a person of the same name
mentioned with others in the publication.

An article in a newspaper, alleged in a declaration to be a libellous publication
concerning the plaintiff, was headed, "Was his a 'graveyard' case?" and be-
gan as follows: "The death of D., who was buried on Tuesday, has revived the
matter of graveyard insurance. It is reported that several men had policies on
his life, knowing when they were issued that he was suffering from consump-
tion, which policies, it is alleged, were obtained through a fraudulent physi-
cal examination by Dr. H." After stating that D.'s father charged his son's
death to malpractice on the part of Dr. H., and giving the particulars of his
illness, it proceeded as follows: "He had been informed that policies on his
son's life were held by Dr. H.," and several other persons named, including
the plaintiff. *Held*, on demurrer, that the publication contained a libel upon
the plaintiff.

Two ACTIONS OF TORT.   The declaration in each case alleged
that, on December 27, 1883, the defendant caused to be pub-
lished in a newspaper called the Fall River Daily Herald, pub-
lished by the defendant, a false and malicious libel concerning
the plaintiff, as follows:

"Was his a 'graveyard' case?   Suspicions aroused by the
recent death of John F. Downing. — The father's story. — The
death of John F. Downing, who was buried on Tuesday, has re-
vived the matter of graveyard insurance.   It is reported that
several men had policies on his life, knowing when they were
issued that he was suffering from consumption, which policies,
it is alleged, were obtained through a fraudulent physical exam-
ination by Dr. Hennessey.   The father of the deceased, Michæl
T. Downing, feels thoroughly convinced, from some reason, that
his son's death was brought about by malpractice on the part of
Hennessey, to subserve his life insurance schemes.   Mr. Downing
said yesterday, that in December, 1882, John contracted a severe
cold, and, as he was a member of the Ancient Order of Hiber-
nians, he secured medical advice from the society physician, Dr.

Hennessey. Instead of improving, the cold grew worse under the doctor's care, until it developed into consumption, which resulted in the man's death. The father states, as a reason for his belief that his son's illness was cultivated, that the medicine furnished was extremely pungent, and its use always followed by acute pains in the breast and stomach. He had been informed that policies on his son's life were held by Dr. Hennessey, Edward Driscoll, Jr., W. J. Hurley, Patrick Gillan, William Barlow, Stephen Broderick, and Patrick Riley. He also learned that a prominent politician had visited his son, and offered to pay him $2 a week during his lifetime if he would be a party to a fraudulent examination, but that the offer was rejected."

The defendant demurred to the declaration, for the following reasons: "1. Because said declaration does not state a legal cause of action substantially in accordance with the Pub. Sts. c. 167. 2. Because it does not appear that the article relied on as libellous referred to the plaintiff, or was intended to refer to him. 3. Because the alleged libellous words do not by their natural import in any manner charge or impute to the plaintiff crime or wrong-doing of any kind. 4. Because said article is not libellous."

The Superior Court sustained the demurrer, and ordered judgment for the defendant; and the plaintiffs appealed to this court.

*D. V. Sullivan*, for the plaintiffs.

*H. K. Braley*, for the defendant.

HOLMES, J. The averment in each declaration, that the alleged libel was published concerning the plaintiff, is sufficient to identify the W. J. Hurley and Patrick Gillan mentioned in the publication with William J. Hurley and Patrick Gillan, the plaintiffs, respectively. *Chenery* v. *Goodrich*, 98 Mass. 224. If, therefore, a charge is made in that publication against the Hurley and Gillan mentioned there, which is libellous on its face, the plaintiffs have a good cause of action to that extent. We say to that extent, for words that do not necessarily refer to Hurley or Gillan are not within the scope of the declaration as it stands. The only statement in terms referring to them is this: "He had been informed that policies on his son's life were held by Dr. Hennessey, W. J. Hurley, Patrick Gillan," and others.

But the article is headed "Was his a 'graveyard' case?" and begins thus: "The death of John F. Downing, who was buried on Tuesday, has revived the matter of graveyard insurance. It is reported that several men had policies on his life, knowing when they were issued that he was suffering from consumption, which policies, it is alleged, were obtained through a fraudulent physical examination by Dr. Hennessey." We think that, taking the title and opening sentence of the article into account, the public might well infer that the mention of the plaintiffs as holding policies was intended to suggest that they were among the "several men" who are referred to in the beginning as having policies obtained through a fraudulent examination by Dr. Hennessey. There seems to be no other reason for mentioning them, and the joinder of Dr. Hennessey's name with theirs strongly confirms our opinion. It is plainly implied that these men were parties to the alleged fraud by which the policies were obtained. Such an intimation is libellous, however indirectly made, and not the less so that it is introduced simply as what had been reported or alleged. The demurrer therefore must be overruled; but, if either of the plaintiffs considers that he is touched by any further innuendo or statement in the article, he must amend his declaration before he can make it part of his cause of action.

*Judgment reversed, and demurrer overruled.*