## LUMAN P. NORTON *v.* JAMES H. LIVINGSTON.

*Libel. Plaintiff confined to meaning laid by innuendo. Whether language is ambiguous, for the Court. Evidence.*

1. Where the language of the alleged libel is susceptible of two meanings, in either of which it is actionable *per se*, the plaintiff is confined upon trial to that meaning put upon the words by his innuendo, and the defendant can only justify them in that sense.

2. If the language admits of more than one meaning, it is for the jury to say what it means; but it is for the court to determine whether it does admit of more than one meaning, and if not, to say what that meaning is.

3. The meaning of the libel should be gathered from the whole publication, read and understood as people in general would read and understand it.

4. The entire publication was : "Luman P. Norton is the only insurance agent in Vermont who has been convicted in open court of wilful perjury." *Held*, that the word "convicted" could only mean, found guilty by legal decision, and was not susceptible of the meaning, proved guilty or detected in guilt.

5. Upon the cross-examination of the defendant certain subsequent articles in his newspaper were introduced upon the question of malice. It appeared that these articles were written and their publication paid for by one Childs. Thereupon the plaintiff offered to show that there existed a bitter feud between Childs and the plaintiff, and that the plaintiff had published many libellous articles concerning Childs, which provoked these articles. *Held*, not admissible, it not appearing that this feud between Childs and the plaintiff was known to the defendant, nor that Childs instigated the libel in suit.

Action for libel. Plea, the general issue with notice of special matter in justification. Trial by jury at the February

term, 1892, Bennington county, Tyler, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The libel sued upon was as follows: "Luman P. Norton is the only insurance agent in Vermont who has been convicted in open court of wilful perjury," and this was the whole publication. The plaintiff alleged by the innuendos in his declaration that the defendant meant thereby to charge the plaintiff with having been indicted, tried and convicted of perjury. The defendant set forth in his notice and offered to show on trial that in a certain action pending in the Bennington County Court, to which the plaintiff was a party, the said plaintiff testified in his own behalf, and in the course of his testimony upon a material issue committed perjury; that he was then and there detected therein in so summary and convincing a manner that his guilt was apparent to all who were present; and the defendant insisted that the word "convicted" was not used in its legal sense of tried and found guilty, but in its more popular sense of found guilty or detected in guilt, in which, if the jury found the words were so used, they were true. The court ruled, however, that the defendant could justify the language only in the sense laid by the innuendo, and rejected the evidence as matter of justification, to which the defendant excepted.

The defendant then claimed that it should be left to the jury to say whether the words were used in the sense claimed by him or in the sense put upon them by the innuendo, but the court declined to submit this issue to the jury, and instructed them to return a verdict for the plaintiff, to which the defendant excepted.

The remaining exception appears in the opinion.

*C. A. Prouty* and *C. H. Mason*, for the defendant.

The innuendo might have been rejected on trial by the plaintiff and a recovery had upon the words themselves. Hence it should have been left to the jury to say in what sense they were used, and if the jury found that they were used in the sense

claimed by the defendant, then he might show that in that sense they were true. Odgers Lib. and Slan. 101, 177, 487 ; *Sabin* v. *Angell*, 46 Vt. 740 ; *Watkin* v. *Hall*, L. R. 3 Q. B. 396.

If this is not so, and the plaintiff was bound by meaning assigned by the innuendo, then it should have been left to the jury to say whether the words were used in that sense. Odgers Lib. and Slan. 94, 98, 101 ; Folk. Star. Slan. and Lib. ss. 556, 559, 561, 564 ; *Riddell* v. *Thayer*, 127 Mass. 487 ; *Goodrich* v. *Wolcott*, 3 Cow. 231.

*Waterman, Martin & Hitt*, and *C. H. Darling*, for the plaintiff.

If the defendant seeks to justify, he must justify the libel as laid in the innuendo. *Nott* v. *Stoddard*, 38 Vt. 25 ; *Royce* v. *Maloney*, 57 Vt. 325.

The language of the libel was plain and unambiguous. It could only have been understood by the reader in one sense, and it is immaterial what the writer may have intended. Town. Sl. and s. 140 ; *Knapp* v. *Fuller*, 55 Vt. 311.

The opinion of the court was delivered by

ROWELL, J. The defendant did not attempt to justify the publication in the sense ascribed to it in the innuendo, but claimed that it is capable of being understood in another and a different sense, and sought to have that sense found by the jury and to justify accordingly, admitting a libel in either sense.

The basis of his position in respect of justification is, that the plaintiff was not bound by the innuendo, but was at liberty to abandon it and to rely for recovery on the meaning claimed by the defendant, and that therefore the defendant had a right to do as he sought to do.

But this position is not tenable; for when the words have different meanings, either of which makes them actionable, an innuendo, if it is good, determines which meaning the plaintiff intends to rely upon, and therefore he cannot abandon the in-

nuendo at the trial and rely upon a different meaning. 1 Am. Lead. Cas. 141. The language of *Bagley*, B., in *Williams* v. *Scott*, 1 C. & M. 675, 687, is so much in point that we quote it : " It has been contended that this innuendo may be rejected, and that the plaintiff will then be entitled to a verdict on this count. * * * You may reject on demurrer or on motion in arrest of judgment an innuendo that is not warranted by the preceding allegations in the declaration ; and all the cases cited by the plaintiff's counsel are cases of this description. But the question here is, whether you may reject at the trial an innuendo that is good upon the face of the declaration ? By such an innuendo the plaintiff makes it part of his case that the alleged slander bears the peculiar character that he assigns to it ; and I know of no instance in which it has been held that you may separate the words themselves from the explanation that the plaintiff has given to them. *Sellers* v. *Till*, 4 B. & C. 655 ; *Smith* v. *Carey*, 3 Camp. 461, and the dictum of Lord *Ellenborough* in *Woolnoth* v. *Meadows*, 5 East, 470, lean the other way, and appear to show that the whole of an innuendo that is not bad on the face of the declaration must be proved; they show that such an innuendo gives a specific character to the libel or slander that becomes parcel of the issue, and a failure in proof of which will be fatal to the plaintiff's case." *Smith* v. *Carey* is an apt illustration of this rule. There the words were that "he lived by swindling and robbing the public." They were laid differently in different counts, but in each count there was an innuendo that the defendant thereby meant that " the plaintiff had been and was guilty of *felony* and *robbery*." The words were proved as laid, but they appeared to allude to a transaction from which it might be inferred that the defendant meant to charge plaintiff only with *fraud*. Lord *Ellenborough* said that the words in themselves were actionable, and that if there had been no such innuendo as to their meaning, the plaintiff would certainly have been entitled to a verdict ; but that the plaintiff

was bound to show that they were spoken in the sense he had ascribed to them, and if the jury should be satisfied that they were spoken with intent to impute, not felony, but merely fraud, there must be a verdict for the defendant.

The defendant, in support of his position, refers to Odgers on Lib. & Sland. 101, 177, 487, and *Watkin* v. *Hall*, L. R. 3 Q. B. 396. But these are authorities under the Common Law Procedure Act, 1852, which altered the common law, and by which every innuendo may be good although not supported by a prefatory averment, and a declaration containing one count for libel or slander, with an innuendo that the words were used in a particular sense, is taken as if there were two counts, one with the innuendo and one without the innuendo ; and if the plaintiff proves either, it is sufficient. It follows, therefore, that the defendant may plead a justification as to the words with the meaning in the innuendo and also as to them without that meaning. But that such was not the common law, Mr. Justice *Blackburn* shows in that very case, for he says that before the passage of that act, an innuendo was preceded by an inducement as to the application of the slander, and if the inducement did not support the innuendo the action failed, because it was not allowable to show that the words were used in a different though slanderous sense, unless the declaration charged words that were actionable without any explanation. This amounts to saying that the innuendo being bad, may be rejected. Mr. Justice *Willes* puts it more pointedly in *Bremridge* v. *Latimer*, 12 W. R. 878, thus : "Formerly [before the passage of said act] where the declaration made use of an insufficient innuendo, that innuendo might alway be rejected as surplusage, to prevent the plaintiff from being defeated ; but where the innuendo could be supported, the plaintiff was bound by it."

The innuendo in the case at bar is good, because the libel is certainly susceptible of the meaning ascribed to it, and therefore the plaintiff was bound by the innuendo, and could not recover

unless the words meant what they were alleged to mean. But if they are also susceptible of the meaning claimed by the defendant, it was for the jury to say what they mean, and not to submit that question was error; hence the question arises whether they are susceptible of the meaning claimed. The language is this : "Luman P. Norton is the only insurance agent in Vermont who has been convicted in open court of wilful perjury."

The rule in the construction of alleged libels is, that if the language is ambiguous and admits of more than one meaning, it is, when necessary to ascertain the meaning, for the jury to say what it means; but if, on the other hand, the language is not ambiguous and does not admit of more than one meaning, it is for the court to say what it means. *Gregory* v. *Atkins,* 42 Vt. 237 ; *Lewis* v. *Chapman,* 16 N. Y. 369 ; *Hunt* v. *Bennett,* 19 N. Y. 173; *Pittock* v. *O'Niell,* 63 Pa. St. 253 ; 3 Am. Rep. 544; *Bourreseau* v. *Detroit Evening Journal Co.* 63 Mich. 425 ; 6 Am. St. Rep. 320.

The meaning of this libel depends upon the construction to be given to the word "convicted" as used therein. The defendant claims that it is capable of being understood to mean, not only that the plaintiff had been convicted in the sense of having been tried and found guilty by legal decision, but also that he had convicted himself by his own testimony in open court, and stood self-convicted in the minds and estimation of those who heard him testify ; or, in other words, that his testimony in open court had detected him in wilful perjury, or proved him guilty of it. The meaning of that word is to be gathered from the whole publication, which we must read as people in general would read it, and understand it as they would understand it ; and reading and understanding it thus, what is there to suggest the meaning claimed by the defendant ? The words are direct and positive—"has been convicted in open court of wilful perjury." Language could scarcely be more apposite, not only to impute perjury, but to charge a conviction of it by legal decision.

It is the conviction that is charged to have been in open court, not the perjury, which, as the defendant claims, constituted the conviction that the libel means. The perjury may have been committed out of court as well as in court, for ought that is said. We think that the language is justly susceptible of no other meaning than the one ascribed to it in the innuendo, and that to have submitted it to the jury to find another meaning would have been allowing them to indulge in unwarrantable conjecture.

In his testimony the defendant disavowed malice. On cross-examination touching that disavowal, his attention was called to several articles in subsequent issues of his paper, the publication of which he admitted, and they were put in evidence. It appeared that some of those articles were written by one Childs, and their publication paid for by him at ten cents a line, but that they appeared in the paper as editorials and news items. The defendant thereupon offered to show that there had been a long standing feud between Childs and the plaintiff; that the plaintiff had published or caused to be published scurrilous and libellous articles concerning Childs; and that the libellous articles paid for by Childs grew out of that feud. The defendant admitted that he composed and wrote the libel sued for, and did not claim that Childs instigated it. The testimony was excluded, for which a sufficient reason is found in the fact that it does not appear and was not offered to be shown that at the time of the publication of those articles the defendant had any knowledge of the existence of such feud, without which the fact that it existed and that those articles grew out of it, could not avail him if otherwise it might, as to which we express no opinion.

*Judgment affirmed.*