ARTHUR LANCOUR *v.* HERALD AND GLOBE ASSOCIATION.

Special Term at Rutland, November 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 7, 1941.

372

374

*William L. Scoville* and *George P. Drury* for the plaintiff.

*Fenton, Wing & Morse* for the defendant.

MOULTON, C. J. This is an action of libel, brought against the defendant corporation, the publisher of the Rutland Herald, a daily newspaper. Trial was had by jury, with verdict for the defendant and the cause is before us on the plaintiff's exceptions.

The article upon which this action is based, was published in the Rutland Herald of November 19, 1936 and is as follows:—

"BROTHERS AWAIT
 TRIAL FOR THEFT

Arthur Lancour, 23, Locked
 Up with Floyd, 14;
 Store Robbery Alleged

Arraignment in Rutland Municipal court of Floyd Lancour, 14, arrested on Tuesday on a charge of robbery while armed, and his brother, Arthur, 23, who was taken into custody yesterday in connection with the theft of nine revolvers at the Wilson Clothing Company store on Merchants Row, was postponed yesterday by State's Attorney Asa S. Bloomer, pending further investigation of the case.

The pair, sons of Mr. and Mrs. John Lancour of Evelyn street, are being held in Rutland city jail until their cases are presented in court.

Arthur was arrested on information given to police by the younger brother, it is said. According to authorities, Floyd in his alleged confession, stated that Arthur waited outside the window in the rear of the clothing store while Floyd climbed through a broken window the second time to destroy possible clues left behind. The revolvers stolen are valued at $150. The burglary took place late Saturday night."

The defendant filed the general issue and special pleas which denied that the publication charged or purported to charge that the plaintiff was guilty of any criminal offense or that its language warranted or was reasonably susceptible of such a construction; alleged that the publication was a fair, full and correct report of the proceedings in the Rutland Municipal Court in connection with the complaint filed and warrant issued in the case against the plaintiff and of the proceedings incidental and preliminary thereto and of the charges and claims asserted therein, did not purport to express any comment or opinion as to the guilt or innocence of the plaintiff, and was made without malice or evil intent; and averred that, as the publisher of the newspaper, it was lawfully entitled and privileged to publish full, fair and impartial reports of judicial proceedings had in the lawfully constituted courts of this State, including the reports concerning arrests of persons charged with offenses against the law and the claims asserted in connection therewith by the lawfully constituted public authorities charged with the enforcement of the law.

The facts that appeared in the evidence were these: During the night of Saturday, November 14, 1936, the store of the Wilson Clothing Company in the City of Rutland was broken into and a number of revolvers stolen. On the following Tuesday the plaintiff's brother, Floyd Lancour, fourteen years old, was arrested in the town of Wallingford on another charge. Having been brought to Rutland and interrogated by the police he confessed to the burglary of the Wilson store and implicated the plaintiff in its commission saying that the latter waited outside while he made a second entry into the store to remove possible finger prints. The plaintiff was found at his home early in the evening and taken by two policemen to the jail, where he was questioned and denied participation in the crime. The State's Attorney was informed by telephone and he directed the police to arrest the plaintiff, saying that he would later issue the warrant. The plaintiff was thereupon arrested and lodged in jail. A warrant was issued on November 20, and the plaintiff was arraigned in the Rutland Municipal Court on November 25, and, having pleaded not guilty, bail was fixed at $1000, and being unable to furnish security in this amount, he remained in jail until December 5th, when he was discharged by the court

for lack of evidence. Information of what Floyd had said relative to the plaintiff's alleged complicity in the crime was given to a reporter of the defendant by a detective who had taken part in the interrogation of the boy.

The jury were instructed that the article in question was not, as a matter of law, libellous, and it was left to them to find whether such was its import; that it should be construed as a whole, including the headline, and taken in the sense in which the readers to whom it was addressed would ordinarily understand it; and that if, from reading the entire article, they should find that those who read it would ordinarily understand that the defendant was accusing the plaintiff of committing the crime of burglary or larceny, or being an accomplice in the commission of these crimes, the article was libellous.

■ This was, of course, a ruling that the language of the publication was ambiguous, admitting of more than one meaning, hence for the jury to construe. The plaintiff seasonably presented a number of requests for instructions, all of which went to the point that the publication was unambiguous, and should be ruled upon by the court as a matter of law and excepted to the failure to comply with them, and also took an exception to the charge as given.

■ The meaning of an alleged libel is to be gathered from the whole publication *Norton* v. *Livingston,* 64 Vt. 473, 478, 24 Atl. 247. It is not to be construed *in mitiori sensu,* but the language is to be taken in its plain and natural meaning, and to be understood by courts and juries as other people would understand it, and according to the sense in which it appears to have been used and the ideas it is adapted to convey to those who read it. *State* v. *Sutton,* 74 Vt. 12, 15, 52 Atl. 116; *Darling* v. *Clement,* 69 Vt. 292, 297, 37 Atl. 779. If such language is ambiguous and admits of more than one meaning, it is, when necessary to ascertain the meaning, for the jury to say what it means; but if the language is not ambiguous, and does not admit of more than one meaning, it is for the court to say what it means. *Norton* v. *Livingston, supra; Gregory* v. *Atkins,* 42 Vt. 237, 249, 250.

■ The publication of the fact that a person has been arrested, and upon what charge, is not actionable if true, "but if to this fact is added, by way of comment, words which amount

to an accusation that the charge is true, or comment which assumes the guilt of the person arrested, by headlines or otherwise, the mere fact that the person was arrested upon the charge related is no justification for words imputing guilt." *Commercial Publishing Co.* v. *Smith*, 149 Fed. 704, 706; *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 181 N. E. 249, 253; *Tresca* v. *Maddox*, 11 La. Ann. 206, 66 Am. Dec. 198, 200. The arrest of the plaintiff, although made without warrant, was legal, if the officers had reasonable cause to suspect that he had committed a felony, as, in the absence of any claim to the contrary, we assume that they had. *Usher* v. *Severance*, 86 Vt. 523, 528, 86 Atl. 741; *State* v. *Shaw*, 73 Vt. 149, 169, 50 Atl. 863; *State* v. *Taylor and O'Donald*, 70 Vt. 1, 4, 39 Atl. 447, 42 L. R. A. 673, 67 Am. St. Rep. 648.

 Here, in addition to the fact of the arrest and the charge upon which it was based, the defendant published the statement of Floyd Lancour, which unequivocally accused the plaintiff of complicity in a felony, the falsity of which is not disputed. The fact that it was set forth as being a part of Floyd's alleged confession does not detract from its libellous character, for "the fact that the charge was qualified by the words 'it is alleged' or their equivalent does not absolve the defendants from responsibility for publishing it. An accusation purporting to rest on hearsay is none the less defamatory." *Maloof* v. *Post Pub. Co.*, 306 Mass. 279, 28 N. E. 2d. 458, 459; *Peck* v. *Wakefield Item Co.*, 280 Mass. 451, 183 N. E. 70, 72; *Lundin* v. *Post Pub. Co.*, 217 Mass. 213, 104 N. E. 480, 52 L. R. A. (N. S.) 207, 209; *Kimball* v. *Post Pub. Co.*, 199 Mass. 248, 85 N. E. 103, 19 L. R. A. (N. S.) 862, 864; *Hurley* v. *Fall River Daily Herald Pub.* Co., 138 Mass. 334, 336; *Amick* v. *Montross*, 206 Ia. 51, 220 N. W. 51, 58 A. L. R. 1147, 1150. The principle is of long standing. It was applied in *Meggs* v. *Griffith*, Cro. Eliz. 400, (1595).

 It is said in *Skinner* v. *Grant*, 12 Vt. 456, 461, 462, and in *Torrey* v. *Field*, 10 Vt. 353, 412, that the repetition of a defamatory statement by a third person is justified where at the time of such repetition the name of the original speaker is given. The former case was an action for slander, but in the latter the rule was said to be also applicable to libel, although with misgiving, for, to quote Redfield, J., the writer of the opinion

(p. 413): "It may be doubted, whether, on principle, a libel ought ever to be justified by giving up, at the time of the publication, the name of the author, if the author did not put the charge in writing. By reducing oral slander to writing, its character is very materially changed, and its importance very much enhanced. Hence the excuse would seem to fall short of a full justification. But the cases treat the justification as sufficient, even in cases of libel." A careful examination of the two opinions shows that what was said in each of them upon this subject was by way of dictum; and indeed the doubt expressed by Judge Redfield appears to have been well founded. Even before the decision in *Torrey* v. *Field,* it was held by Kent, C. J. in *Dole* v. *Lyon,* 10 Johns. 447, 449, 6 Am. Dec. 346 that the publisher of a libel is responsible to the party libelled, notwithstanding that the name of the author is given, and that there was no precedent for such a justification in an action for libel. This is according to the weight of present authority. *Layne* v. *Tribune Co.,* 108 Fla. 177, 146 So. 234, 86 A. L. R. 466, 471; *Nicholson* v. *Rust,* 21 Ky. Law 645, 52 S. W. 933, 934; Annotation, 15 Am. St. Rep. 333, 342. It is the rule as stated in the American Law Institute's Restatement of Torts, vol. 3, para. 578, comment b. We approve and adopt it as applicable to this case, anything in *Torrey* v. *Field* to the contrary notwithstanding.

The article published by the defendant contained language which taken in its plain and natural meaning and according to the sense in which it appears to have been used, was not ambiguous, and was defamatory in that it charged the plaintiff with complicity in the commission of a felony. It was error to submit its construction to the jury. *Howland* v. *Blake Mfg. Co.,* 156 Mass. 543, 572, 31 N. E. 656; *Brinsfield* v. *Howeth,* 107 Md. 278, 68 Atl. 566, 568, 24 L. R. A. (N. S.) 583. It is not necessary to consider the other grounds of exception to this instruction.

In further instructing the jury, the Court said: "The defendant on its part claims that the article of November 19 was privileged in that it was a newspaper, had a right to publish the article, and was not liable in the absence of actual malice. The Court charges you that the article of November 19 was not privileged as a matter of law and leaves it to you to find whether the defendant is liable." The plaintiff claims that this language

382

"was plainly a ruling of law that the defendant had failed to sustain its plea of privilege by sufficient evidence, and its effect was to remove that issue from the consideration of the jury;" and that, since the defendant took no exception to this instruction, no question of privilege has been reserved for our attention.

■ But a charge is not to be construed piecemeal but as a whole. *Flanders* v. *Newport Trucking Co.*, 102 Vt., 437, 438, 150 Atl. 128; *In Re Moxley's Will*, 103 Vt. 100, 104, 152 Atl. 713. The jury were further told that if "you find from the evidence that the arrest of the plaintiff was made pursuant to the direction of the State's Attorney, and under the circumstances as related by Mr. Bloomer, then the court charges you that the defendant had the legal right to publish a fair, impartial and substantially accurate report of the fact of the arrest, the accusation, and the theory of the prosecuting officers in connection therewith, provided no opinion was expressed as to the guilt or innocence of the plaintiff. If you find therefore that the article of November 19, taken as a whole, including the headlines, and considering all of the statements contained therein together, was a fair, impartial and substantially accurate report of the proceedings and claims of the prosecuting authorities, and that such article was reasonably calculated to convey to the reading public the meaning (that) the plaintiff was arrested by the officers on the charges referred to and did not convey a meaning that the plaintiff was guilty of the offense charged, then the defendant is not liable for the publication and the plaintiff cannot recover."

■ It is clear, therefore, that the question whether the publication was privileged was left to the jury and that that portion of the charge which the plaintiff regards as a ruling of law, thus removing the issue from the case, did not have this effect, and should be construed only as meaning that, in the opinion of the court, it could not be said as a matter of law that the privilege existed, upon the assumption that the jury should find that the publication was libellous.

■ ■ The propriety of the instruction last quoted was, however, challenged by exceptions taken by the plaintiff to the charge as given and to the refusal of the court to comply with various requests to charge upon the subject. The issue of privilege is therefore before us. These exceptions are numerous and detailed, but as they all raise the same question in one way

or another they need not be considered singly. Both parties regard the answer to the question to be found in the application of the rules of law pertaining to the publication of newspaper accounts of judicial proceedings.

That a qualified privilege exists where such account is fair, impartial and substantially accurate, even though it may contain matters otherwise libellous, is well settled. See *Shurtleff* v. *Stevens,* 51 Vt. 501, 519, 31 Am. Rep. 698. Originally the privilege did not attach until the court had completed its function and reached a final conclusion; but, as Coleridge, C. J., remarked in *Usill* v. *Halès,* (1878) L. R. 3 C. P. D. 319, 325: ''We are not now living, so to say, within the shadow of those cases.'' The present rule extends the privilege to all matters which have been made the subject of judicial proceedings, though such proceedings may be merely preliminary or interlocutory or even *ex parte. Lundin* v. *Post Publishing Co.,* 217 Mass. 213, 104 N. E. 480, 52 L. R. A. (N. S.) 207, 210. And see *Cavanaugh* v. *Austin,* 42 Vt. 576, 579. The reason is the security which publicity gives for the proper administration of justice. The occasional inconvenience of the individual must yield, in such instance, to the general good. *McDermott* v. *Evening Journal Ass'n,* 43 N. J. L. 488, 489, 39 Am. Rep. 606. ''It is desirable,'' says Mr. Justice Holmes, in *Cowley* v. *Pulsifer,* 137 Mass. 392, 394, 50 Am. Rep. 318, ''that trials should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed. If these are not the only grounds upon which fair reports of judicial proceedings are privileged, all will agree that they are not the least important ones.''

There is, however, a diversity of opinion as to when a given proceeding is judicial and when it is not. In Massachusetts the rule is that the principle of qualified privilege ''is limited to matters which really have been made the subject of judicial action. It does not give the right to publish statements made in declarations or other papers filed in court on the ground merely that they have been placed on the files of the court, or until they

have been brought to the attention of the court and some judicial action has been taken on them." *Lundin* v. *Post Publishing Co.*, 217 Mass. 213, 104 N. E. 480, 52 L. R. A. (N. S.) 207, 209, 210. To the same effect are *Peck* v. *Wakefield Item Co.*, 280 Mass. 451, 183 N. E. 70, 72; *Cowley* v. *Pulsifer*, 137 Mass. 392, 394, 50 Am. Rep. 318; *Nixon* v. *Dispatch Printing Co.*, 101 Minn. 309, 112 N. W. 258, 12 L. R. A. (N. S.) 188, 190, 11 Ann. Cas. 161; *Byers* v. *Meridian Printing Co.*, 84 Ohio St. 408, 95 N. E. 917, 38 L. R. A. (N. S.) 913, 916. But where the plaintiff had been arrested under a warrant issued under the seal of the court, bearing the teste of the judge, and having been taken before a magistrate, was admitted to bail, it was held that judicial nature of the proceeding had been established. *Thompson* v. *Boston Publishing Co.*, 285 Mass. 344, 189 N. E. 210, 212; *Thompson* v. *Globe Newspaper Co.*, *supra*.

On the other hand, the publication of the contents of a complaint containing scandalous matter, entered in court, but withdrawn before any judicial action had been taken upon it, was held, in *Campbell* v. *New York Evening Post, Inc.*, 245 N. Y. 320, 157 N. E. 153, 156, 52 A. L. R. 1432, to be within the protection of qualified privilege. The reasoning of this decision is followed in *Lybrand* v. *State Co.*, 179 S. C. 208, 184 S. E. 580, 104 A. L. R. 1118, 1123.

The various decisions bearing upon both sides of this question are set forth in Annotations to be found in 12 L. R. A. (N. S.) 188, 38 L. R. A. (N. S.) 913, 52 A. L. R. 1438, and 104 A. L. R. 1124, and it appears that the decided weight of present authority favors the rule followed in Massachusetts.

 But, however this may be, we do not regard a preliminary police investigation as a judicial proceeding or the publication of a statement made in the course thereof by the self confessed perpetrator of a crime concerning an alleged accomplice as within the protection of a qualified privilege. Information of this nature given out by the police is not to be considered as a statement of facts developed on a judicial investigation or the statement of a fact resulting from a judicial investigation. *Arnold* v. *The Sayings Company*, 76 Mo. App. 159, 181, 182. It has been held that reports made to police officers charging persons with crime are not judicial proceedings the publication of which are privileged. *Jastrzembski* v. *Marxhausen*, 120 Mich. 677, 79

N. W. 935, 937; *McAllister* v. *Detroit Free Press Co.*, 76 Mich. 338, 43 N. W. 431, 15 Am. St. Rep. 318, 322; *Billet* v. *Times-Democrat Publishing Co.* 107 La. 751, 32 So. 17, 21, 58 L. R. A. 62, 66. In the last mentioned case it is said: "Neither common convenience nor the interests of society require that the opinions, suspicions and deductions of police and detective officers, whether reported in writing to their superior officers, or through the telephone to the newspapers, should be published to the world." The principle is recognized in *Cincinnati Gazette Co.* v. *Timberlake*, 10 Ohio St. 548, 78 Am. Dec. 285, 286; *Barrows* v. *Pulitzer Publishing Co.* (Mo.), 255 S. W. 925, 930; *Williams* v. *Black*, 24 S. D. 501, 124 N. W. 728, 731; *Houston Chronicle Publishing Co.* v. *Tiernan*, (Tex. Civ. App.) 171 S. W. 542, 546. And see *McDermott* v. *Evening Journal Ass'n*, 43 N. J. L. 488, 489, 39 Am. Rep. 606.

The defendant relies upon *Williams* v. *Journal Co.*, 211 Wis. 362, 247 N. W. 435; *McClure* v. *Review Publishing Co.*, 38 Wash. 160, 80 Pac. 303; and *Kilgore* v. *Koen*, 133 Ore. 1, 288 Pac. 192. The Williams case had to do with the report of a grand jury, which at the time of the publication had been placed on file by the authority of the court and this was held to be a public statement made in a judicial proceeding, and therefore privileged under the Wisconsin statute. The McClure and Kilgore cases involved publications of what the police had informed the defendants concerning the evidence connecting the plaintiffs with the alleged crimes, and in each instance there was held to be a qualified privilege. In the Kilgore case it was said (p. 196, 288 Pac.) that the public was entitled to know whether there were reasonable circumstances upon which to base the arrest, and that the officers had the right to detail the circumstances and their theories based thereon on, which it was proper for the defendant newspaper to publish.

No doubt it is desirable that the public may know that the police and other officials charged with the duty of detection and arrest for crime are acting upon reasonable grounds in the discharge of their function. But, weighing the social values involved, it seems better to confide in the diligence and discretion of such officials, rather than that any person should be subjected to unmerited obloquy through the publication of false accusations made to them in the course of their investigations, the

tendency of which is, in the words of Ellenborough, C. J., in *Rex* v. *Fisher*, 2 Camp. 563, 571, "to prejudice those whom the law still presumes to be innocent and to poison the sources of justice." And see, *Barrows* v. *Bell*, 7 Gray 301, 316, 66 Am. Dec. 479. The public interest does not require that the right to enjoy a good name shall be made subservient to the right of free speech. *State* v. *Colby*, 98 Vt. 96, 102, 126 Atl. 510.

We hold that there was error in the submission of the issue of privilege to the jury.

 In view of what we have said in the foregoing opinion it appears that the question of damages only is left for determination. The remand, therefore, will be for a trial upon this issue. See *Griffin* v. *B. & M. R. R. Co.*, 87 Vt. 278, 296, 89 Atl. 220.

*Judgment reversed and cause remanded for trial upon the issue of damages only.*