ERNEST ACKERMAN *v.* FREDA KOGUT ET AL.

(84 A2d 131)

May Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 2, 1951.

Opinion on Motion for Reargument Filed November 14, 1951.

*Louis Lisman* for defendant Kogut.

*Fayette & Deschenes* for the plaintiff.

BLACKMER, J. This is an action for damages under V. S. 47, § 6214, which gives to a person who is injured by an intoxicated person a right of action against a person who by selling or furnishing intoxicating liquor unlawfully has caused in whole or in part such intoxication. Trial was by jury, with verdict and judgment for the plaintiff. The defendant Kogut filed her bill of exceptions. Since she is the only appellant, the words "the defendant" when they appear below refer to her alone.

The plaintiff alleged that the unlawfulness of the sale consisted in a violation of Regulation #18 of the Liquor Control Board, which reads: "No alcoholic liquor shall be sold or furnished to a person

apparently under the influence of liquor." The damage for which recovery was had below was caused by one Willette. The defendant moved for a directed verdict on the ground that there was no sufficient evidence that Willette was "apparently" under the influence of liquor at the time the jury found that she sold or furnished intoxicating liquor to him. The motion was denied, and the denial is the first assignment of error.

The plaintiff's evidence tended to show the following facts. On Saturday, August 13, 1949, after work Willette went to a restaurant where he drank heavily for two hours. He then went to the defendant's restaurant, known as the Champlain Grill, arriving about 7:30 P. M. When he arrived he was feeling the effects of the drinks he had had. At the Grill he had one or two drinks of beer. During his stay there he either has no memory of what happened, or a very clouded memory. While at the Grill, he visited the men's room and staggered en route. A little before eight P. M. he left the Grill. At this time he had been drinking noticeably. He has no memory of anything which happened after he left the Grill until about 2 A. M., the last three hours of which period he was asleep in a chair at the police station. Immediately after leaving the Grill he engaged in a short conversation with a friend; got into his automobile; drove the automobile down the left side of Battery Street in the City of Burlington at a speed of forty to fifty miles per hour; drove almost to the left curb of the street; he was stooped over the wheel; narrowly missed hitting head on an automobile proceeding in the opposite direction; drove to the left of a silent policeman at the intersection of Battery and Pearl Streets; at 8:05 P. M. collided with the plaintiff near the silent policeman and while still on the wrong side of the street; failed to stop and render assistance; turned onto a side street; hit and slightly damaged a parked truck, and thereupon abandoned his automobile. A little after 8:00 P. M. he appeared at a filling station with his sister, who was holding him up; he was staggering quite a bit. At this time he endeavored to put through a telephone call, but could not make the operator understand the number he wanted. While his sister placed the call for him, he sat with his head down on a desk. He had had too much to drink. At about 8:30 his face was flushed, his eyes bloodshot and his clothes disarranged. There is no evidence tending to show, nor claim made, that Willette had anything to drink after leaving the Champlain Grill.

44

██ The evidence detailed is ample to support the jury's finding that Willette was "apparently" under the influence of intoxicating liquor when the defendant served him beer. "Apparently under the influence of intoxicating liquor" means apparently under the influence of intoxicating liquor in the slightest degree. *State* v. *Hedding,* 114 Vt 212, 215, 42 A2d 438; *State* v. *Storrs,* 105 Vt 180, 185, 163 A 560. Loss or confusion of memory is a symptom of drunkenness. Glaister, Medical Jurisprudence and Toxicology, 5th Ed., 560. Intoxication may be evidenced circumstantially by prior or subsequent condition of intoxication within such a time that the condition may be supposed to be continuous. 2 Wigmore, Evidence, 3d Ed. § 235. This accords with our rule that an inference may be and often is retroactive; a trier may from present conditions infer a previous fact. *Cross* v. *Passumpsic Fibre Leather Co.,* 90 Vt 397, 407, 98 A 1010.

██ Recognition of the fact that a person is in a drunken or intoxicated condition requires no peculiar scientific knowledge. 20 Am Jur, Evidence, § 876. True enough, there is no direct evidence that Willette was apparently under the influence of intoxicating liquor at the precise moment that beer was served to him. Yet the picture painted before the jury indicated a state of gross drunkenness over all and at the time he was in the Champlain Grill. Courts and juries in weighing evidence are to calculate on probabilities, not possibilities. *Miller* v. *People,* 216 Ill 309, 74 NE 743. To our mind the jury found not only the probable fact, but the highly probable fact, when it concluded that the defendant "showed his liquor" at the appropriate time.

██ It is pressed by the defendant that for the jury to infer that Willette was under the influence, and also to infer that such was apparent, is basing an inference on an inference. We take the view that intoxication and the degree thereof are so intertwined as to constitute but one inference. But if they were deemed separate inferences, one is not built upon the other, but each is drawn from the same evidence, and therefore permissible under the rule in *Gero* v. *John Hancock L. Ins. Co.,* 111 Vt 462, 480, 18 A2d 154. Error in the denial of the motion for a directed verdict does not appear.

The trial court charged the jury that the credibility of the witnesses and the weight to be given to their testimony was entirely for the jury's determination, and asked the jury to consider whether it was probable in the natural course of events that the witnesses

could and would have heard and seen correctly, remembered accurately, and testified truthfully. The court then proceeded to charge:

> "It is your duty to reconcile conflicting testimony if you can upon the theory that all the witnesses have sworn to the truth, but if you cannot do so then you are to determine from all the evidence before you which of the witnesses is entitled to the greater credit. Oftentimes, one or more persons, witnesses of a certain occurrence, differ in their narratives of what occurred and that difference is not the result of any untruthfulness but from the fact that they either saw or heard it from a different standpoint or else they remembered it differently. In fact, because of human nature this is usually the case in situations where there are numerous details that are or may be observed. The average person cannot observe and remember each detail in such situations accurately."

To this latter part of the charge the defendant excepted on the ground that the charge as to "duty" was in effect an instruction that there is a presumption that witnesses speak the truth. Our attention is directed to *Mullaney* v. *Goss Co.,* 97 Vt 82, 86, 122 A 430, where it was held that there is no presumption that witnesses testify truly and not falsely.

■■ We recognize the principle of *Mullaney* v. *Goss Co., supra,* as valid, but it is not controlling here. It is a well established rule that it is proper to instruct that it is the duty of the jury to reconcile, if possible, all of the evidence, and not needlessly to impute perjury to any of the witnesses. Anno., 127 ALR 1385, 1406. The last mentioned rule was recognized in *Bates* v. *Cilley,* 47 Vt 1, 4, where this charge was approved: "as a general rule where witnesses differ, if you can give a solution of it which will be satisfactory to your minds upon the theory that they all intend to tell the truth, that is generally a safer way of reconciling testimony, than it is to reconcile it upon another theory, which must involve the finding that witnesses on one side or the other had committed perjury, and sworn to what they knew was not true." Perhaps the words "A safer way" as used in *Bates* v. *Cilley, supra,* are preferable to the word "duty" used by the trial court. But we

will not put the court below in error over a choice of words when the substance is the same, particularly when the use of the word "duty" is sanctioned by the books. The situation here presented is very much the same as that in *Shores* v. *Simanton,* 99 Vt 191, 198, 130 A 697. No error appears.

■ The defendant briefs an exception concerning the trial court's definition of "intoxication" in its charge. Taking the charge as a whole, as we must, *Gould* v. *Gould,* 110 Vt 324, 329, 6 A2d 24; *Lancour* v. *Herald & Globe Ass'n,* 111 Vt 371, 382, 17 A2d 253, 132 ALR 486, the jury were instructed: "Where one by reason of his indulgence in intoxicating liquor has ceased to retain full control of his faculties of mind and body, he is under the influence of intoxicating liquor, and the extent to which he has lost the use of his physical and mental powers is not material upon this question. Intoxication is the impairment of the capacity to think and act correctly and efficiently caused by the use of intoxicating liquor. * * * * * Intoxicated as used in law means more than being under the influence as we have explained that term." The exception was that the definition of intoxication was the same as the definition of being under the influence of intoxicating liquor. The exception does not stand up, because as set forth above the court clearly told the jury that intoxicated means more than being under the influence. The use of the noun in one place and the adjective in another was not calculated to confuse or mislead the jury. True enough, an adequate definition of "intoxicated" was not given, but no complaint was made on that score. As against the exception taken, the charge was sound.

Regulation #18 of the Liquor Control Board and its connection with this case were set forth in the second paragraph of this opinion. The defendant attacks the power of the Board to make this Regulation on three grounds.

■ First the defendant says that the regulation was issued under an unconstitutional delegation of legislative power by the General Assembly to the Liquor Control Board. It is argued that V. S. 47, § 6171, which gives the Liquor Control Board authority and power "to prescribe such rules and regulations * * * * * as may be necessary to carry out the provisions of this chapter" goes too far in delegating power because it gives to the Board power to make regulations without setting up any standards to govern it. The Constitution of the State of Vermont, Chapter 2, §§ 2, 5, and

6, having to do with the separation of powers, are cited to us. The point made, however, has already been considered and decided adversely to the defendant. Since traffic in intoxicating liquor is a mere matter of privilege because it is of a character tending to be injurious, discretion may lawfully be delegated to public officials without prescribing definite rules of action. *Billado* v. *Control Commissioners,* 114 Vt 350, 355-356, 45 A2d 430.

Second is a claim that Regulation #18 is void under the due process clause of the Fourteenth Amendment to the Constitution of the United States of America. In support of this proposition is cited *A. L. A. Schechter Poultry Corporation* v. *United States of America,* 295 US 495, 55 S Ct 837, 79 L ed 1570, 97 ALR 947. That case has to do with the delegation of legislative power by the Congress of the United States of America, not with the delegation of legislative power by a state legislature. Apparently there is nothing in the Federal Constitution to prevent a state legislature from delegating to another department, board, commission, or officer of the state government any legislative function within the province of the legislature itself that it sees fit so to delegate, and the decision of the highest court of the state as to whether a delegation of power by the legislature conflicts with the state Constitution must be accepted in a Federal court as final. Annotation, 79 L ed 474, 478-479. This second claim is not upheld.

Third it is argued that Regulation #18 is not necessary, under V. S. 47, § 6171, to carry out the provisions of V. S. 47, Chapter 271, entitled "Control and Regulation of Intoxicating Liquors." The argument is that there is nothing in Chapter 271 which would make this regulation necessary for carrying out its provisions.

V. S. 47, Chapter 271 is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state, V. S. 47, § 6120. While permitting the sale and furnishing of alcoholic beverages, the spirit and purpose of the law is that traffic in intoxicating liquor shall be so conducted as to discourage intoxication and encourage temperance. V. S. 47, §§ 6133 (I) and (V), 6175, 6206, 6208, 6209, 6214, 6216, 6217 and see Chapter 271 in its entirety. The Chapter is to be liberally construed for the accomplishment of these purposes. V. S. 47, § 6120. This Court's mind is entirely clear that a sale or furnishing of alcoholic liquor to a person apparently under the influence of liquor is immediately and directly contrary to the purposes of V. S. 47,

Chapter 271; it is held that Regulation #18, forbidding such a practice, is reasonably necessary to carry out the provisions of the chapter.

Lieutenant G. A. McKenzie of the Burlington Police Department was being examined by the plaintiff on the subject matter of whether Willette had been warned of his constitutional rights before certain tests of his condition were made after the injury and after his arrest. This happened.

> Q. What warning was given him?
>
> A. * * * * * I explained to Mr. Willette that he did not have to submit to this examination unless he wished to and the reason we got the doctor in (Objection—immaterial, overruled) that the reason we got the doctor in was so that he would receive an impartial examination. (Objection—immaterial. Ruling, the answer may stand. Exception.)

To sustain an objection on the grounds of immateriality alone, it must appear that the evidence is clearly irrelevant. *Woodhouse* v. *Woodhouse,* 99 Vt 91, 124, 131, 130 A 758; *Paska* v. *Saunders,* 103 Vt 204, 214, 153 A 451. It is assumed for the present purpose, but not decided, that the matter objected to, namely the reason for getting a doctor in, was clearly irrelevant. Even when the appellate court feels that error has been committed in admitting certain evidence, it will not, as a rule, find prejudice where the evidence admitted was entirely irrelevant, i.e. immaterial. Sound practice would seem to allow the action of the trial judge to stand, unless prejudice should arise from other causes, for example where the evidence is affirmatively shown to have confused or misled the jury. Chamberlain's Handbook on Evidence, § 663; 3 Chamb. Ev., § 1749. We are not impressed by the defendant's assertion that she was harmed and prejudiced by that part of the answer to which exception was taken. There was so much credible evidence that Willette was intoxicated after the injury that the half sentence complained of occupies a position of insignificance. Moreover, the doctor's examination appears from the evidence to have been impartial; no claim to the contrary was made below or is made here. It is not made to appear that the error, if error it was, has injuriously affected the rights of the defendant. Supreme

Court Rule 9; *Joly* v. *Coca-Cola Bottling Co. of Rutland,* 115 Vt 174, 183, 55 A2d 181; *Ripley* v. *Spaulding,* 116 Vt 531, 532, 80 A2d 375.

A witness named Beach was called by the plaintiff. The material parts of his examination are these.

Direct examination.

Q. Did you and Mr. Willette have any intoxicating liquor to drink after you got to the Champlain Grill?

A. One or two rounds, not any more than that.

Cross examination.

Q. If you have testified anything different than that, do you want to change that now and leave it that you didn't see Mr. Willette drink anything in the Champlain Grill on August 13, 1949?

A. That's right.

Redirect examination.

Q. Would you say, Mr. Beach, now, that it is your best judgment that you and Charles Willette did have at least one or possibly two drinks?

A. Yes.

Q. At the Champlain Grill?

A. Yes.

Recross examination.

Q. Did you see Charles Willette drink anything at the Champlain Grill when you were there with him on Aug. 13, 1949?

A. No, I didn't see him drink anything, no.

Q. You didn't see him drink anything at all?

A. No.

Q. If you said anything to the contrary in your testimony do you want to change it now to leave it that you did not see Mr. Willette drink anything at all?

A. Yes.

Q. So far as you know, did Charles Willette have anything to drink at the Champlain Grill on Aug. 13, 1949?

A. No.

Q. If you have testified to anything different today than that last answer, do you want to change it so it will read like your answer you just gave?

At this point a general objection was interposed. The answer was excluded, and the defendant has an exception by the operation of V. S. 47, § 1628(II). The item briefed by the defendant is that she has a right to have the witness correct his statement.

A witness always has a right to modify his statement, when truth and accuracy require. Whenever he has given an erroneous impression regarding the facts of which he has spoken, he should be allowed to make the required correction or explanation. *Piper* v. *Oakland Motor Co.,* 94 Vt 211, 213, 109 A 911. But this defendant has nothing to complain of in this behalf. The witness told his story, then "corrected" it three times, leaving it finally in the way favorable to the defendant. Neither truth nor accuracy required further elaboration. The only erroneous impression given resulted from a complete reversal of story, thrice repeated. The excluded answer had been substantially given in reply to the second preceding question. The situation fell well within the trial court's discretionary control of the cross examination. *Glass* v. *Bosworth,* 113 Vt 303, 306, 34 A2d 113.

After verdict the defendant filed a motion to dismiss on the ground that the action was commenced by trustee process, but nevertheless the plaintiff's writ issued as a capias in violation of the prohibition in V. S. 47, § 1799 and was for that reason void. V. S. 47, § 1799 provides that, with certain exceptions not material, actions of tort may be commenced by trustee process, but that in such actions mesne process shall not issue as a capias.

The plaintiff's writ against the defendant issued as both an attachment and a capias. It was served by attachment of enumerated personal and real property of the defendant. In addition there issued a trustee process summoning the Burlington Savings Bank, a corporation, as trustee of the defendant, to appear and make disclosure. This trustee process was served on "L. M. Brown, Asst. Treasurer of said Trustee." The Bank did not enter an appearance, and no other proceedings were had against it. The question for decision is whether the action was commenced by trustee process within the meaning of V. S. 47, § 1799.

V. S. 47, § 1815 provides that "Service may be made

upon a corporation summoned as a trustee by leaving a true and attested copy of the process with its clerk, cashier or superintendent * * * * *." Since the statute enacts how service "may" be made it is permissive and cumulative; in addition to the officers named therein the president, or corresponding head officer, may also be served by virtue of the common law. Fletcher, Cyclopedia of Corporations, Perm. Ed. 1931, Vol. 9, § 4412, p. 212. The Assistant Treasurer was no officer on whom trustee process could legally be served. It is axiomatic that the proper method of serving process must be adopted in order to render the service effective. *Wade* v. *Wade's Admr.*, 81 Vt 275, 280, 69 A 826; *Swanton Savings Bank* v. *Shapiro*, 103 Vt 345, 348, 154 A 661; 72 CJS, Process, § 25, p. 1024. Since the Bank did not waive the defective service, the Bank was not before the court.

*Graves* v. *Severens*, 37 Vt 651, is determinative. That action could not have been "commenced by the trustee process" under the statutes of that day. The writ, none the less, issued as an attachment against the defendant and also as a trustee process. It was served on the defendant as an ordinary writ of attachment, but no service was made, or attempted to be made, on the trustee. The Court held: "We do not think that a suit should be regarded as 'commenced by the trustee process' unless that process is used to bring the trustee into court as a party to the suit. No service having been made on the trustee in this case, he was not a party to the suit, and no trustee process against him could be considered as pending in court. That part of the plaintiff's writ in respect to the trustee should, consequently, be treated as mere surplusage; and, as such, it may properly be rejected or stricken out." So in the instant case because of a defective service the trustee was never in court; the suit was not commenced by trustee process; that part of the writ which sets up a trustee process is surplusage; the prohibition against a capias in V. S. 47, § 1799 does not apply; the defendant's motion to dismiss was correctly overruled.

The defendant cites *Hayden* v. *Caledonia National Bank*, 112 Vt 30, 33, 35, 20 A2d 675 to the proposition that a writ which issues in the face of a statutory prohibition is void. The decision is sound, but not in point. We have demonstrated above that under V. S. 47, § 1799 the prohibition against mesne process issuing as a capias is conditioned on the commencement of a tort action by trustee process. In the case at bar the condition did not happen.

. All questions relied upon have been decided. *Judgment affirmed.*

Note. At the May term, 1951, this case was assigned to the Chief Justice. Because of his illness it was subsequently re-assigned to Associate Justice Blackmer.

ON MOTION FOR REARGUMENT.

BLACKMER, J. The defendant's motion for reargument makes three points. In response to the first point, we have modified and elaborated that part of the opinion having to do with the motion for a directed verdict. The result remains the same.

Second, the defendant says that we have not reasonably and fairly construed her exception to the trial court's definition of intoxication. We disagree, and refer to the opinion.

The third and last point seeks to further detail the defendant's position, taken in her original brief and argument, that Regulation No. 18 is void under the due process clause of the Fourteenth Amendment. It falls fairly within the rule that argument will not be reopened merely to debate a matter which the Court has found decisive, no error being pointed out. *Waterman v. Moody and Rogers,* 92 Vt 218, 241, 103 A 341. We are content to stand on the result reached in this particular and the authorities cited in support of it.

*Motion for reargument denied.*