## Hugh Longey v. William J. Slator, d.b.a. Addison Independent

[108 A2d 396]

May Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed October 5, 1954.

*William S. Burrage* for the plaintiff.

*Ryan, Smith & Carbine* for the defendant.

**Sherburne, C. J.**   This is an action of libel, brought against the defendant as the proprietor and publisher of the Addison Independent, a weekly newspaper.   The declaration alleges that on February 6, 1953, the defendant composed and published in the Addison Independent the following article concerning the plaintiff:

"HUGH LONGEY, 36
TRUCK DRIVER HELD
IN COUNTY COURT

"Hugh Longey, alias Longley, 36, of Middlebury, employed as a truck driver by Leo Wisell is in Addison County jail Thursday in lieu of $5000 bond pending trial in Addison County Court on charge of rape and adultery. He was arrested Thursday and arraigned before Judge Samuel Fishman in Vergennes. He pleaded innocent and was held by Judge Fishman for county court.

"Bond of $5000 was set when State's Attorney Paul R. Teetor described Longey as 'a menace to the community'. Longey has been involved in several previous sex offenses.

"According to the complaint, Longey assaulted Sylvia Pidgeon, 16, of Salisbury, a cousin of his wife. It is alleged that the offense was committed on Mink Farm Road on Jan. 29.

"Longey was first committed to the Weeks School in 1931 on a sex charge and since then has been involved in others according to Atty. Teetor. His first wife, Marion Nimblet of New Haven disappeared June 10, 1942 and although a wide search was instituted no trace has ever been found. His second wife was Mildred Delphia of Bridport.

"The County Court is scheduled to resume sittings next week but it is not known how soon arrangements can be made for Longey's trial."

The only other portions of the declaration here material are the innuendoes in paragraphs 7, 8 and 9, which read as follows:

"7. By the use and publication of said words and language by the defendant in the article aforesaid, and the implications thereof, the defendant intended to declare and assert, and to be understood as declaring and asserting, and by the readers of said newspaper was in fact understood as declaring and asserting, and the defendant did declare and assert that the plaintiff was a person who had been involved in several previous sex offenses and who had been involved in more than one

other criminal sex charge against him in addition to his being committed to the Weeks School on a sex charge in 1931 and to the sex charge of rape and adultery then pending on the date of the publication of said articles in the Addison County Court, that the plaintiff had disposed and secreted the whereabouts of his former wife Marion Nimblett, that the plaintiff was known as 'alias Longley' and that the plaintiff was a 'menace to the community.'

"8. By the use of the words 'his first wife, Marion Nimblett of New Haven disappeared June 10, 1942 and although a wide search was instituted no trace has ever been found,' as used in said article and said libel, the defendant did attribute to the plaintiff the accusation that the plaintiff was a dangerous person who had by devious means arranged for and had caused the disappearance of the plaintiff's first wife namely Marion Nimblett, and the defendant did, by the use of the said language of said libel, accuse the plaintiff with the dastardly act of having disposed of his said first wife and did wilfully, maliciously and intentionally hold the plaintiff up to ridicule, contempt, hatred and obloquy by imputing to him the dastardly act of having disposed of his said first wife.

"9. By the use of the words 'alias Longley' as used in said article and said libel, the defendant did intend to accuse and imply, and to be understood as accusing and implying, and by the readers of said newspaper was in fact understood as accusing and implying and the defendant did accuse and imply that the plaintiff was a criminal with a criminal record so long and vast as to have gained for himself an alias appellation, a term used in connection with hardened and habitual criminals, and thus did intend to accuse and imply, and to be understood as accusing and implying, and by the readers of said newspaper was understood as accusing and implying that the plaintiff was a hardened and habitual criminal."

The defendant seasonably moved to strike from the declaration as impertinent material and surplusage substantially as follows:

All the allegations in paragraph 7 as applied to and including the clause "that the plaintiff had disposed and secreted the whereabouts of his former wife Marion Nimblett," and all the allegations in paragraph 8, "upon the grounds that the language of the publication does not warrant a construction that plaintiff had disposed of and secreted the whereabouts of his former wife or that he had by devious means caused the disappearance of his first wife or committed the dastardly deed of having disposed of his first wife and that any innuendo that is capable of such construction should and must be rejected as surplusage. The impertinent matter does not lay a proper foundation for the reception of evidence and its elimination at this time will prevent what would probably be a lengthy inquiring into improper and irrelevant material."

Also all the allegations in paragraph 9, "upon the grounds that the words 'alias Longley' do not warrant a construction that plaintiff was a criminal with a criminal record so long and vast as to have gained for himself an alias appellation or that the plaintiff was a hardened and habitual criminal and that any innuendo that it is capable of such construction should and must be rejected as surplusage."

To the granting of the defendant's motion in these respects the plaintiff excepted, and the cause has been brought here before final judgment.

■ The meaning of an alleged libel is to be gathered from the whole publication, and its language is to be taken in its plain and natural meaning, and to be understood by courts and juries as other people would understand it, and according to the sense in which it appears to have been used and the ideas it is adapted to convey to those who read it. *Lancour* v. *Herald & Globe Ass'n.*, 111 Vt 371, 379, 17 A2d 253, 132 ALR 486, and cases cited.

■■ An innuendo is merely explanatory of what is already set forth. It is an averment of the meaning of the alleged libelous words. It does not and cannot add to, enlarge or

change the sense of the words charged. If an alleged libel is not capable of the construction which is given it in an innuendo it is proper, on demurrer, to reject the innuendo as surplusage. *Jones* v. *Roberts*, 73 Vt 201, 203, 50 A 1071.

A demurrer is either to the whole, or to a part of a declaration. If a declaration contains several counts, only one of which is bad, the defendant should only demur to the insufficient count, for if he demur to the whole declaration and one count is good, his demurrer should be overruled. *Price* v. *Holden*, 104 Vt 504, 162 A 376. This rule equally applies to one count, part of which is insufficient, and the residue is not, provided the matters alleged are divisible in their nature. Chitty's Pleadings, 13th Am. ed., Vol. 1, p. 665. This rule applies in a libel complaint, where one or more of the innuendoes are not warranted, when another innuendo is warranted or when the declaration will be good if it charges words that are actionable *per se*. This rule was applied in *Jones* v. *Roberts*, *supra*, where, although the innuendoes were rejected as surplusage, the declaration charged words that were actionable *per se*.

The first point that the plaintiff makes under his exception to the granting of defendant's motion is that the sufficiency of the complaint can only be met by a demurrer. As we have noted, the proper way to raise the question of whether an alleged libel is capable of the construction given it in an innuendo is by demurrer. However, the motion asks that the particular innuendoes be struck upon the grounds that the language of the publication does not warrant the construction that is alleged, and that any innuendo that is capable of such construction should and must be rejected as surplusage. Had the defendant demurred upon like grounds and asked that such innuendoes be rejected as surplusage this objection could not have been successfully raised. The motion to strike is in effect a demurrer, and we so treat it regardless of what it is called. *Kaeser* v. *Town of Starksboro*, 116 Vt 389, 391, 77 A2d 831; *Johnson and Wight, Inc.* v. *Rickard*, 115 Vt 118, 120, 52 A2d 786.

The only remaining question necessary to consider is whether the alleged newspaper article is capable of the con-

struction given it in the particular innuendoes, concerning which the court granted defendant's motion to strike.

We will first take up the innuendoes in paragraphs 7 and 8 of the declaration, given to the sentence in the article: "His first wife, Marion Nimblett of New Haven disappeared June 10, 1942, and although a wide search was instituted no trace has ever been found," that the plaintiff had disposed and secreted the whereabouts of his former wife, Marion Nimblett, and that he had by devious means caused her disappearance, and committed the dastardly deed of having disposed of her. Since there is no inducement in the declaration the justification for these innuendoes must be found within the four corners of the article.

After relating that the plaintiff was held in jail pending trial in the county court on a charge of rape and adultery, the gist of the article is that the State's Attorney has declared him to be a menace to society, because since his commitment to the Weeks School in 1931 on a sex charge he had been involved in several other sex offenses prior to the charge upon which he was then being held, which was an assault on a cousin of his wife. Then follows the sentence here in question about the disappearance of his first wife and that although a wide search was instituted no trace has ever been found. This is followed by a sentence telling who his second wife was. These two sentences are newsworthy in that they identify not only plaintiff's present wife, the cousin of the young woman assaulted, but also her predecessor.

Taking the article as a whole and applying the tests above taken from *Lancour* v. *Herald & Globe Ass'n.*, *supra*, for ascertaining the meaning of the sentence here in question, by no fair, reasonable, nor even liberal construction can it be claimed that its language is capable of imputing that the plaintiff had disposed and secreted the whereabouts of his former wife, Marion Nimblett, or that he had by devious means caused her disappearance, or committed the dastardly deed of having disposed of her.

It is to be noted that the article does not state that the plaintiff's former wife disappeared under suspicious circumstances. There is nothing to indicate that she did not

desert him because of his affairs with other women. The plaintiff has cited three cases in support of his claim that the article is ambiguous and capable of the construction given in the innuendoes. In the first such case the libel mentions peculiar circumstances surrounding the death of a woman, that her body had been disinterred and her stomach had been sent away for examination, that her husband within two months of his wife's death has remarried and now drives an auto and his whereabouts are unknown. In the second case the pictures of the four boy plaintiffs were inserted in an article stating that a girl had been murdered. In the third case the publication stated that a woman had been poisoned and that the defendants had been named in a suit charging them with a misuse of her funds. It is obvious that these cases are entirely unlike the case before us.

Lastly we will take up the innuendoes in paragraph 9 of the declaration given to the words "alias Longley", that the plaintiff was a criminal with a criminal record so long and vast as to have gained for himself an alias appellation and that the plaintiff was a hardened and habitual criminal.

The adverb "alias" means otherwise; otherwise called; and is used (the full form being *alias dictus*) in legal proceedings to connect the different names of anyone who has gone by or been known by two or more. Webster's New International Dictionary. We might possibly agree with the authority cited by the plaintiff to the extent that if the two or more names connected by the word are so different as to have no common derivation and the difference is not merely of how the names are spelled, the word may perhaps connote to the public mind some previous criminal activity. But where, as here, the only difference in the names between which the word 'alias' is inserted, is the matter of adding the letter "l" in the middle of the surname, that word of itself, taking the article as a whole and applying the foregoing tests, is clearly incapable by any fair and reasonable construction of justifying such innuendoes, or any of them.

The result is that plaintiff's exceptions must be overruled. The defendant's motion in so far as it asked that another in-

nuendo be struck was denied, and the exception saved thereto has been waived by the defendant.

*The judgment entered upon defendant's motion to strike impertinent material is affirmed, and the cause is remanded.*