Argued January 7, affirmed May 27, 1930

## KILGORE *v.* KOEN

(288 P. 192)

*Arthur G. Beattie* of Oregon City (Schuebel, Beattie & Miller of Oregon City on the brief) for appellant.

*Livy Stipp* of Portland for respondent.

BEAN, J. The plaintiff, C. V. Kilgore, was a teacher in the grade schools of Molalla, Clackamas county, Oregon, where he had been employed for some time. The defendant was the owner and editor of the Banner Courier, published at Oregon City, Clackamas county, Oregon.

The plaintiff alleges that the defendant maliciously published articles in such newspaper, which were false and defamatory, to his damage. A portion of the articles are set forth in the body of the complaint and the whole articles are attached as exhibits to the pleading for our consideration. The first article complained of is headed, "School Principal is Accused of Theft," and recites, in substance, that C. V. Kilgore of the Molalla grade school is under arrest charged with burglary, with his preliminary examination set for Saturday; that he was arrested Saturday morning on land that he owns and the direct accusation that he must face in court is breaking into the barn of O. F. Cady, and stealing a single harness. The article then proceeds:

"The defense of Kilgore is expected to be that he bought the harness early Saturday morning from an unknown man, but the deputy sheriffs who worked up the case, feel that they have a water-tight case against the school principal, having in their possession earth containing the peculiar footprints.

"When Cady went to his barn Saturday morning he found the harness missing. He called the sheriff's office and two men went out. The officers found foot prints leading from the barn that were peculiarly marked in that the hobnails were placed at a certain point on the shoes. These tracks led first towards the woods, then veered off and went to the garage on the

Kilgore place. From there they led to the Kilgore house. There they found Kilgore wearing the shoes that had made the fresh tracks from the Cady barn to the Kilgore garage and home. They placed him under arrest and found the missing harness in Kilgore's car in the garage.''

It is then stated that Kilgore was brought to Oregon City and arraigned before a justice and bail was fixed which he furnished and in regard to his being employed in the school at Molalla. The particular portion of the article complained of and set forth in the complaint, to which we add those portions in italics, is as follows:

''*O. F. Cady told the officers that he had reason to suspect Kilgore.* Some time ago forty Rhode Island Red hens were stolen from the Cady place, and at that time Cady tracked some one to the Kilgore place and there found about the same number of red hens. Cady inquired of Kilgore as to where he got them, getting the answer that they were purchased from the O. A. C. A letter from Cady brought the information that the college had had no dealings with Kilgore, and that they did not handle that particular breed of chickens. *Because of this happening the officers at once suspected Kilgore, and their suspicions were strengthened by the finding of the easily identified tracks leading from the Cady place to the home of Kilgore.*''

It also states that the friends of Kilgore point out their reasons for believing that he is innocent, among which is that other articles had been taken from the Cady barn, but none were found upon search of the Kilgore home.

The second item and alleged cause of action is contained in the following paragraph. That portion, which

we italicized, is not referred to in the body of the complaint, except as it appears in the exhibit thereto, reads as follows:

"The two deputies who worked up the case insist that the testimony is enough to hold Kilgore for trial, they having followed the peculiar fresh footprints from the Cady barn to the home of Kilgore, and there found not only the harness, but found on Kilgore the shoes that exactly matched the footprints. Earth containing the footprints was taken up and is in the county clerk's office. It is expected to keep this record in shape for presentation when the case comes to trial. *Since the arrest the officers have been busy, and have some interesting leads. A man named Tracy is laying claim to the chickens found on the Kilgore place, and which Tracy insists were stolen from him some months ago.*"

The newspaper proceeds to mention his connection with the school and that the sentiment at Molalla is divided; that Kilgore has his strong friends and to the effect that the sheriff takes the position that the case should be investigated. The third item in the newspaper and cause of action is not relied upon, upon this appeal and therefore will not be referred to.

The plaintiff was tried in the circuit court upon the charge and acquitted.

The defendant demurred to the complaint which demurrer was overruled and afterward answered admitting the publication of the articles, but denied that they were maliciously published or were false or defamatory and denied the damage and further, pleaded that at the time of the arrest the sheriff's deputies stated to defendant the facts upon which the arrest was made, which he published in the newspaper as detailed by the officers without any maliciousness

toward plaintiff, and as an article of news with respect to the arrest of plaintiff to inform the public thereof and pleads justification; and claims that the articles complained of were qualifiedly privileged.

Plaintiff contends that the libelous words impute a crime and that the libelous words are libelous *per se* and are presumed to be malicious and are not privileged.

The defendant takes the position that the publication of the articles concerning the charge for which plaintiff was arrested and tried was published as the report of the law officer; that it made no charge or imputation that the plaintiff was guilty of a crime, and is qualifiedly privileged.

Upon the trial the plaintiff, as a witness, testified in substance, that he was a principal in the Molalla public school and had taught school for twenty-six years; that he was married and had one boy left in the family. There was no attempt upon the part of plaintiff to indicate or prove any actual or express malice on the part of defendant in the publication of the articles complained of. Plaintiff then rested, whereupon the motion for a nonsuit was granted. The defendant moved to strike portions of defendant's answer and requests a ruling thereon in the event that the ruling upon the motion for a nonsuit is not sustained.

■ The plaintiff assigns error in granting defendant's motion for a nonsuit, which is in the nature of a demurrer to the evidence. The ruling on the motion for a nonsuit raises the questions of law pertaining to the case. Privileged communications are usually divided into two classes: (1) absolute privilege, and (2) conditional or qualified privilege, or, as is some-

times called, "quasi privilege." In cases of absolutely privileged communications, the occasion is an absolute bar to the action, while in cases of conditionally or qualifiedly privileged communications, the law raises only a prima facie presumption in favor of the occasion. Where it is said to be conditioned upon the want or absence of express malice: 36 C. J., p. 1238, § 203; see also *Upton v. Hume,* 24 Or. 436 (33 P. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863).

■■ A qualifiedly privileged communication, which we have to consider in this case, is a defamatory communication made on what is called an occasion of privilege without actual malice. As to such communications there is no civil liability. The fact that a publication is qualifiedly privileged simply relieves the publication from the presumption of malice which would otherwise prevail: 36 C. J., § 205, p. 1241.

■ It is so well settled that it seems unnecessary to state, except to avoid misunderstanding, that in the absence of a statute, newspapers as such have no peculiar privilege but are liable for what they publish in the same manner as the rest of the community. This rule is not inconsistent with the "liberty of the press," as this right is recognized and is guaranteed by both the federal and state constitutions in this country: 36 C. J., § 261, p. 1271.

It is sometimes held that newspapers are not to be held to the exact facts, nor to the most minute details of the transactions they publish, that what the law requires is that the publication shall be substantially true and that mere inaccuracies, not affecting materially the purport of the article. are immaterial: 36 C. J., § 262.

As a general rule fair and impartial reports of judicial, executive or legislative, and sometimes other public official proceedings, are considered qualifiedly privileged: *36 C. J.*, § 263, p. 1276.

In most jurisdictions a full, fair and impartial report of judicial proceeding is qualifiedly privileged although the report contains matters that would otherwise be defamatory and actionable and no action will lie therefor except on proof of malice in making it.

If the proceeding relates to a matter within the jurisdiction of the court, the report is privileged regardless of how the jurisdiction was invoked or exercised, or whether it had jurisdiction of the person. Fair and accurate reports of proceedings in police courts are privileged even though no legal record is kept of such proceedings.

The rule attaches to judicial proceedings even if preliminary or ex parte in their nature. Where the proceedings are such as will result in a final decision being given, its report is privileged, although it is published before the final decision is given, but the rule implies that there must be a hearing of some kind: 36 C. J., §§ 266, 267, p. 1276.

As a general rule the reports of criminal proceedings are privileged even if preliminary or ex parte in their nature, if any judicial action has been had thereon: 36 C. J., § 268, p. 1277.

In the case of *McClure v. Review Pub. Co.*, 38 Wash. 160 (80 P. 303), where an alleged libelous newspaper article contained no statement that plaintiff was guilty of burglary and only purported to state the acts, theories and representations of the police officers as to plaintiff's pursuit, arrest, trial and acquittal of such offense, and that she had associated with burglars

and was connected with certain burglaries, it was held that the matter was quasi-privileged. The opinion was written by Mr. Justice Dunbar, who was then one of the ablest jurists of the northwest. The fact of the arrest of the plaintiff in a remote part of Stevens county, Washington, by the chief of police of Tacoma, the plaintiff, being an actress then living on a dairy farm and accused of being the queen of burglars, was written up in what the court termed a somewhat flamboyant and embellished style, giving all the details of the arrest and theories of the detectives, yet the court held that the articles were undoubtedly qualifiedly privileged and there being no express malice alleged, a demurrer to the complaint was sustained. See note Ann. Cas., 1917B, page 424.

■ In the present case we have malice alleged, but no proof of malice and the articles read as a whole, giving them their ordinary signification, do not indicate any malice on the part of defendant. Neither is such malice indicated by the circumstances surrounding their publication.

■ In case of the publication of an article that is qualifiedly privileged, the burden of proving malice rests upon the plaintiff: 36 C. J., § 266, p. 1276; *Peck v. Coos Bay Times Pub. Co.,* 122 Or. 408, 422 (259 P. 307).

■■ Whether or not the articles in question were libelous *per se,* as contended by plaintiff, and therefore were impliedly malicious, was a matter of law for the court to determine. The privileged character of the occasion is determined by a ruling of the court: 37 C. J., 106, § 553; *Peck v. Coos Bay Times Pub. Co.,* supra, citing *Woolley v. Plaindealer Pub. Co.,* 47 Or. 619 (84 P. 473, 5 L. R. A. (N. S.) 498) ; *State v. Conklin,* 47 Or. 509 (84 P. 482).

■ It was held by this court in *Peck v. Coos Bay Times,* supra, speaking by Mr. Justice BELT, in effect, that in such determination, the court must look to the general purport and intent of the article published and not to isolated sentences. That words are to be construed in their ordinary acceptance and meaning: *Ruble v. Kirkwood,* 125 Or. 316 (266 P. 252); see note to *Flanagan v. Nicolson Pub. Co.,* Ann. Cas. 1917B, page 424 et seq.

Where an alleged libelous article is qualifiedly privileged, it is incumbent upon the plaintiff to allege and prove express or actual malice. When malice is shown then the privilege ends. In other words, the qualified privilege attaching to fair and accurate reports, may be rebutted by proof of actual malice: Odgers on Libel and Slander, (6th Ed.) p. 265; 17 R. C. L., § 75. There it also states: "The question whether or not a communication is privileged is primarily a question of law for the court where the facts and circumstances surrounding the publication are not disputed by the parties."

17 R. C. L., p. 347, § 93, reads in part:

"The publication of a report of preliminary proceedings before a justice of the peace on a criminal charge, resulting in the accused being held or committed to await the action of the grand jury, has been held to be privileged, and the fact that no record is kept of the proceedings of a magistrate does not detract from the privilege attaching to a fair report thereof."

17 R. C. L., p. 348, § 94, reads in part:

"On the other hand, it has been held that articles in a newspaper containing no statement on the part of the newspaper as to whether or not the plaintiff was

guilty of the crime charged, but only purporting to be a statement of the acts, theories and representations of the officers of the law are qualifiedly privileged and in the absence of express malice are not actionable.''

We quote from the note to *Flanagan v. Nicholson Publishing Co.,* 137 La. 588 (68 So. 964, L. R. A. 1917E, 510, Ann. Cas. 1917B, 424), as follows:

''It is within the qualified privilege of a newspaper to publish in good faith as current news all such matters as involve open violation of law or public misconduct such as justifies police interference, and matters in connection with and in aid of the prosecution of inquiries regarding the commission of a crime, even though the publication may reflect on the actors and tend to bring them into public disgrace or contempt'': Citing *Wash. Post. Co. v. Wells,* 27 App. Cas. (D. C.) 495; *Tilles v. Pulitzer Pub. Co.,* 241 Mo. 609 (145 S. W. 1143); *McGeary v. Leader Pub. Co.,* 52 Pa. Super. Ct. 35.

In this kind of a case before the jury is required to pass upon the questions involved, there was the previous question for the trial judge, ''Is there any evidence to go to the jury of inaccuracy or of malice''? Where there is no suggestion of malice and no evidence upon which to base reasonable finding that the report is not absolutely fair, the trial judge should stop the case and direct a verdict or nonsuit in favor of defendant: Odgers on Libel and Slander, p. 267.

The cases of *Barnett v. Phelps,* 97 Or. 242 (191 P. 502, 11 A. L. R. 663); *Davis v. Sladden,* 17 Or. 259, 21 P. 140; *Reiman v. Pac. Dev. Soc.,* 132 Or. 82 (284 P. 575), and *Mount v. Welsh,* 118 Or. 568 (247 P. 815), are instructive upon the question of libel. See also Or. L., §§ 91 and 92.

In the article complained of published by defendant, there was no opinion or intimation expressed by the

defendant imputing a crime to plaintiff or expressing any opinion as to his guilt or innocence.

It is admitted that the case was regularly brought before a magistrate and afterward presented to the grand jury. This indicates there was probable cause for the arrest. At the time of the publication the plaintiff had not had his trial and that, of course, could not be contained in the articles.

The plaintiff at the time of argument stated that he made no claim based upon publication of the matter in connection with stealing the harness, but contended that the defendant had no right to publish the matter in regard to the stealing of chickens. An examination of the article shows that the same makes no reference to stealing of the chickens, except as a reason why the officers suspected the plaintiff and followed the tracks to his garage.

The newspaper does not accuse the plaintiff of stealing chickens, but merely states that the officers, because of the statement made to them, in regard to the chickens, suspected Kilgore and their suspicions were strengthened by the finding of the tracks leading from the Cady place to the home of Kilgore. This portion of the article is left out entirely in the main part of the complaint, as is also the statement that O. F. Cady told the officers that he had reason to suspect Kilgore upon the same ground.

The public was entitled to know through the newspaper whether there were reasonable circumstances connected with the matter upon which to base the proceedings and arrest the defendant. The fact that plaintiff was a teacher and man of prominence does not change the rule. The sheriff and his deputies

had the right to detail the circumstances, and their theories based upon the circumstances, in regard to the arrest and it was proper for the newspaper to publish the same. The matter was connected with the case and germane to the preliminary arrest.

We hold that the articles complained of were not libelous *per se* which was a matter of law for the court to determine. In so doing the court must look to the entire articles and their general purport and intent of the same and not to isolated sentences, which are picked out by plaintiff: *Peck v. Coos Bay Times,* supra; *McBee v. Fulton,* 47 Md. 403 (28 Am. Rep. 465); *McClure v. Review Pub. Co.,* supra.

No malice having been shown by the plaintiff in connection with the publication of the articles and their being no suggestion in the articles themselves of any malice, and the articles being prima facie qualifiedly privileged, there was no error of the court in granting the nonsuit.

Counsel for plaintiff states, and we think correctly, that the questions raised in regard to the answer of the defendant are immaterial, unless the ruling upon the motion for a nonsuit is reversed. We therefore do not refer to the contents of the answer.

The judgment is affirmed.

Coshow, C. J., and Belt, J., concur.