[Civ. No. 24283.   First Dist., Div. Two.   Aug. 27, 1968.]

ARTHUR LESLIE HAYWARD, Plaintiff and Appellant, v. WATSONVILLE REGISTER-PAJARONIAN AND SUN et al., Defendants and Respondents.

Richard M. Grossberg for Plaintiff and Appellant.

Wyckoff, Parker, Boyle & Pope, James A. Wyckoff and Bruce A. Richardson for Defendants and Respondents.

AGEE, J.—This libel action against a Watsonville newspaper and its editor is based upon an article published on April 30, 1964, the day after plaintiff was arrested on a charge of grand theft, of which he was subsequently acquitted by a jury. Plaintiff does not allege malice.

Defendants obtained a summary judgment based upon the privilege or immunity given by statute to a public journal to publish a fair and true report of a judicial proceeding (Civ. Code, § 47, subd. 4). Plaintiff appeals from the judgment.

The article in question is as follows:

### "EX-STORE BOSS ARRESTED

"Arthur Leslie Hayward, 42, former manager of a local furniture store, was arrested Wednesday in Sacramento by Federal Bureau of Investigation agents on a grand theft warrant sworn out by the Watsonville police department.

"Hayward is accused of the theft of $3,300 worth of furniture from the Union Furniture Store for which he worked.

"Police said the theft was discovered last spring after Hayward had left here suddenly. Subsequently the store moved to repossess some furniture which he had charged at the store.

"In his home, police said, the additional $3,300 worth of furniture, not charged out on the store's books, was found.

"The FBI was brought into the case after his disappearance. His arrest in Sacramento was on a warrant charging unlawful flight to avoid prosecution, a federal crime.

"Police records show that Hayward previously served a term in a Kansas prison on a check charge.

"He also faces a charge of failure to provide on a complaint issued in Stockton." (Underlined sentences are those complained of by appellant.)

Appellant's brief states that the article was false and unprivileged in the following four particulars:

1. Appellant "was not accused of the theft of $3,300 worth of furniture but only of the theft of property of a value in excess of $200";

2. "The store never 'moved to repossess' any of Mr. Hayward's furniture";

3. "The furniture in question was not stolen, since there were sales slips in the store";

4. "Mr. Hayward has never served a term in a Kansas prison or any other prison on a check charge or any other charge."

Respondent editor's declaration in support of the motion for summary judgment asserts the defenses of truth and privilege and declares that the information upon which the article is based was a criminal complaint, an arrest warrant, and a Watsonville Police Department crime report with an attached FBI Identification Record. These were attached to the declaration as exhibits. In addition a journal entry of the Kansas District Court was appended to the declaration.

The criminal complaint was filed on July 8, 1963 and charges appellant with the theft of certain specified articles of furniture ''belonging to The Union Furniture Company, of the value of over $200.00.'' An arrest warrant was issued on the same date.

In a prosecution for grand theft all that the accusatory pleading need allege is that the personal property alleged to have been stolen ''is of a value exceeding two hundred dollars ($200) ;'' (Pen. Code, § 487).

Hence, respondents relied upon the crime report to ascertain how much ''over $200.00'' was the value of the furniture appellant was charged with stealing. This report stated that the value was ''about $3000.00.'' Thus, the article is substantially in accord with the report when it puts the figure at $3,300. (See *Kurata* v. *Los Angeles News Pub. Co.*, 4 Cal.App. 2d 224, 227-228 [40 P.2d 520] re substantial accuracy.)

The second particular is directed to the statement in the article that, ''Subsequently the store moved to repossess some furniture *which he had charged at the store.*'' (Italics added.)

This sentence contains no imputation of theft. The very next sentence, which is the *third* particular complained of, states: ''In his home, police said, the *additional* $3,300 worth of furniture, *not* charged out on the store's books, was found.'' (Italics added.)

It is thus evident that a distinction was made in the article between the furniture that was charged on the store's books and furniture that was not charged.

The sentence in the article, last quoted above, refers to the ''additional'' furniture, which was the furniture that appellant was charged with stealing. It is to be noted that the source of the information is expressly stated, i.e., ''In his home, *police said, . . .*''

The fourth and last particular is: ''*Police records show* that Hayward previously *served* a term in a Kansas prison on

a check charge.'' (Italics added.) This sentence is deserving of more serious consideration. If the words ''had been sentenced'' had been used in place of the word ''served'' and the word ''forgery'' used in place of the word ''check,'' there could have been no question as to the accuracy of said sentence.

The information upon which the sentence is based is the following entry in the FBI Investigation Record:

| Name and Number | Arrested or Received | Charge | Disposition |
|---|---|---|---|
| Leslie Arden Hayward | 7-5-39 | forgery | 1 to 10 yrs. in the K.S.I.R. paroled. |

The ''Journal Entry'' of the District Court of Rice County, Kansas, shows these facts: that on July 13, 1939, appellant, with advice of counsel, pleaded guilty to a charge of forgery in the second degree; that appellant was thereupon sentenced to be confined in the Kansas State Industrial Reformatory at hard labor for a term of not to exceed ten years; that appellant was placed in the custody of the Sheriff of Rice County until he could be taken to said reformatory; that later on July 13, 1939, appellant made application for parole (probation) and this application was granted, to take effect July 24, 1939. The court record does not disclose whether or not appellant spent any time during this eleven-day period at K.S.I.R.

Appellant filed a declaration in opposition to the motion for summary judgment in which he denied, inter alia, the truth of the sentence in question, i.e., he denied that he had ever been convicted on a check charge or served a term in prison.

The trial court ruled that appellant's declaration created a conflict in the evidence and that there was therefore presented a triable issue of fact with respect to the respondents' defense of *truth*.

The summary judgment therefore rests solely upon the respondents' defense of *privilege*. The privilege claimed is that contained in Civil Code section 47, subdivision 4, which provides in pertinent part that a privileged publication is one made by ''a fair and true report in a public journal'' of a judicial proceeding.

*Does a Newspaper Article Partially Based Upon the Crime Report of a Police Department and the Attached FBI Identification Record Come Within the Foregoing Privilege?*

Preliminarily, we note that appellant does not contend that those portions of the article which are based upon information obtained from the criminal complaint and the arrest warrant are not privileged.

Appellant's complaint is limited to that portion of the article which is based upon information obtained from the crime report of the Watsonville Police Department and the FBI "rap sheet" which was part of the department's file with respect to the charge against appellant.

The question is therefore whether the privilege in question covers such report and rap sheet where they form the basis for the filing of a criminal complaint and the issuance of an arrest warrant.

The article in question was careful to attribute the reported information to police sources rather than stating it as a proven fact. Thus, it met the requirement that in order to qualify as privileged such an article must state the source of its information. (See Prosser, Torts, (3d ed. 1964) § 110, p. 819.)

The general policy as to the scope of the matters that come under the privilege accorded to a "public journal" in reporting a "judicial proceeding" is stated in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380-381 [295 P.2d 405], as follows: "[T]he privilege applies to any publication . . . that is . . . permitted . . . by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked."

Although there is a dearth of case law in California as to what sources of information may be used by a newspaper in publishing an account of a pending judicial proceeding, the leading case would appear to be *Glenn* v. *Gibson* (1946) 75 Cal.App.2d 649 [171 P.2d 118].[1]

There the newspaper obtained its information from many sources. The district attorney and sheriff were quoted repeatedly. As an example, one of the articles stated: " 'In a joint announcement, Sheriff Thornton and District Attorney Lynch said they will urge the strictest penalty for Glenn.' " (P. 652.)

After citing Civil Code section 47, subdivision 4, the court

---

[1]This case was disapproved on another ground in *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465].

said: "That the articles of which plaintiff complains come within this category likewise seems to be clear. They are shown to comprise a history of the proceedings which . . . were instituted by the filing of a criminal complaint in the justice's court . . . and culminated in court proceedings . . . which were reported in the alleged libelous article. . . . The privileged character of reports of this kind had been recognized in numerous decisions by various courts. (*McClure* v. *Review Pub. Co.*, 38 Wash. 160 [80 P. 303, 305]; *Kilgore* v. *Koen*, 133 Ore. 1 [288 P. 192, 194-195]; *Sherwood* v. *Evening News Assn.*, 256 Mich. 318 [239 N.W. 305, 306-308].) In determining the scope of the term 'judicial proceeding' within the purview of the rule, the courts of this state seem to take a comparatively broad view of the question. *Kurata* v. *Los Angeles News Pub. Co.*, 4 Cal.App.2d 224, 228 [40 P.2d 520].) "

In *McClure* v. *Review Pub. Co.*, 38 Wash. 160 [80 P. 303, 305], cited with approval in *Glenn,* the court stated: "It will be seen by a perusal of the articles that there was no statement on the part of the newspapers of whether or not the said plaintiff was guilty of the crime with which she was charged; nothing which can be construed as imputing to her the commission of the crime; but that it only purported to be a statement of the acts and theories and representations of the officers of the law in relation to the pursuit, arrest, trial, and acquittal of the plaintiff; . . . The articles are undoubtedly qualifiedly privileged."

In *Kilgore* v. *Koen*, 133 Ore. 1 [288 P. 192, 196], also cited in *Glenn,* the court said: "The public was entitled to know through the newspaper whether there were reasonable circumstances connected with the matter upon which to base the proceedings and arrest the defendant. . . . The sheriff and his deputies had the right to detail the circumstances, and their theories based upon the circumstances, in regard to the arrest, and it was proper for the newspaper to publish the same. The matter was connected with the case and germane to the preliminary arrest."

Thus, if the oral statements of district attorneys, sheriffs, and police officers come under the qualified privilege immunity, then surely the crime reports of a police department and FBI identification records which are part of such reports, and upon which a criminal complaint is filed and a warrant of arrest is issued, should likewise be qualifiedly privileged under Civil Code section 47, subdivision 4.

Appellant attempts to distinguish the *Glenn* case from the instant one on the ground that it involved a series of newspaper articles which started with a report of statements by the sheriff and district attorney and continued over a period of several days with articles about the trial itself. Appellant argues that the *Glenn* case is not authority "that a single isolated article taken from a police crime report and not followed by a series reporting on the trial itself is privileged." The answer to appellant's argument is that neither the *statute* (Civ. Code, § 47, subd. 4) nor *Glenn* v. *Gibson, supra,* suggests that the privilege is withdrawn unless every phase of the judicial proceeding, from complaint to verdict, is reported. The instant article, as each of the four articles in *Glenn* v. *Gibson, supra,* comprised a history of the proceeding up to the time of its publication.

### *Is the Article a "Fair and True Report"?*

■ This question arises from the interpretation which the article places upon that portion of the FBI record which states that appellant was "Arrested or Received" on "7-5-39" on a "Charge" of "forgery" and that the "Disposition" was "1 to 10 yrs. in the K.S.I.R. paroled."

The newspaper's interpretation, as we have seen, was as follows: "Police records show that Hayward previously served a term in a Kansas prison on a check charge."

If the respondent newspaper had published the FBI entry exactly as it appears on the "rap sheet" we think that anyone reading the article, whether he be a lawyer or a layman, would reach the same conclusion as that of the newspaper reporter who wrote the article. Thus, an exact reproduction of the entry would have done as much harm to appellant as the newspaper reporter's interpretation.

In Kansas, however, "parole" is synonymous with "probation," as we in this state understand the latter word. In California, "parole" indicates a felony conviction and a release from state prison after the serving of a portion of a state prison sentence. Our concept of the word "probation" ordinarily negatives the implication that a state prison sentence was imposed or served.

We do not believe that there would be many, if any, readers of the respondent newspaper who would know the meaning of the initials "K.S.I.R." We know now, of course, that the "R" stands for "Reformatory." Although it may not be a "prison" in the true sense, it is a place where criminal de-

fendants are sent to serve 1 to 10 years and could reasonably be referred to as a "Kansas prison."

In *Kurata* v. *Los Angeles News Pub. Co.*, *supra*, 4 Cal.App. 2d 224 (hearing denied by Supreme Court), a libel judgment in favor of plaintiff was reversed, the court stating, at pages 227-228: "It is well settled that a defendant is not required in an action of libel to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting of the libelous charge be justified, and if the gist of the charge be established by the evidence the defendant has made his case. 'A plea of justification is sustained by justifying so much of the defamatory matter as constitutes the sting of the charge. It is unnecessary to repeat and justify every word of the alleged defamatory matter if the substance of the charge be justified. If the substantial imputations be proved true, a slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently than the actual truth would.' (Sutherland on Damages, vol. 3, p. 2626.) It is not the mere fact that a difference exists between the published report of what the complaint in the proceeding charged and what was actually alleged in the complaint, but rather is the difference of a substantial character and does it produce a different effect." (See also: *Glenn* v. *Gibson*, *supra*, 75 Cal.App.2d 649, 658.)

We hold that under the undisputed facts the article in question was a "fair and true" report of a judicial proceeding within the meaning of Civil Code section 47, subdivision 4, and that it was privileged as a matter of law. There was therefore no triable issue of fact.

Judgment affirmed.

Shoemaker, P. J. and Taylor, J., concurred.