**Lawrence D. MURRAY, Plaintiff,**

v.

**Francis Lee BAILEY, et al., Defendants.**

**No. C–83–5591 WHO.**

United States District Court, N.D. California.

Jan. 4, 1985.

John B. Connelly, William B. Griffin, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff.

Law Offices of F. Lee Bailey, Kenneth J. Fishman, Boston, Mass., for defendant Bailey.

Steinhart & Falconer, James T. Fousekis and James F. Brelsford, San Francisco, Cal., for defendant Stein & Day.

Morrison & Foerster, James J. Brosnahan and Linda E. Shostak, San Francisco, Cal., for defendant ABC.

Cooper White & Cooper, Neil L. Shapiro, San Francisco, Cal., for defendant Chronicle.

## OPINION AND ORDER

ORRICK, District Judge.

This action for libel and slander allegedly committed by defendants Francis Lee Bailey and Stein & Day, Inc., a publishing house, against plaintiff, Lawrence D. Murray, is before the Court on defendants' motions for summary judgment. For the reasons hereinafter set forth, defendant Stein & Day's motion is granted in full, and defendant Bailey's motion is granted on the libel claims and denied on the slander claims.

### I

Plaintiff, Lawrence D. Murray, a former San Francisco assistant district attorney, unsuccessfully prosecuted defendant Francis Lee Bailey in April 1982 for driving under the influence of alcohol and for failing to come to a complete stop at a stop sign. Following his acquittal, Bailey wrote about his arrest and trial in a book entitled *How to Protect Yourself Against Cops in California and Other Strange Places;* the book was published by defendant Stein & Day in mid-October 1982. In this action, plaintiff challenges statements made by Bailey about Murray in the book. Plaintiff also challenges statements that Bailey made on two San Francisco television stations, KRON–TV and KGO–TV, while conducting a promotional tour for his book.

Plaintiff's claims can be divided into three major categories of accusations by the defendants. First, Murray challenges statements in the book that accuse him of having been arrested for driving under the influence of alcohol and for assault and battery of police officers in September 1979.[1] Plaintiff contends that he was actually charged for being drunk in public and resisting arrest. Second, plaintiff challenges Bailey's statements about plaintiff's conduct as the prosecutor in *People v. Bailey*, which was tried in the Municipal Court of the City and County of San Francisco. Plaintiff asserts that Bailey characterized plaintiff as "not a competent, good or credible lawyer," "lacking in honesty, integrity, and skill in his dealings with the public, the court and other attorneys." First Amended Complaint ¶ VIII(d)(e). Furthermore, Murray claims that Bailey's book accuses him of suborning perjury in his prosecution of the case by "orchestrating" police witnesses' testimony to suggest that Bailey was drunk; allegedly Murray procured this testimony in response to the judge's ruling that police testimony about impairment was inadmissible. Finally, Murray objects to Bailey's statements on television that Murray had been convicted of driving under the influence of alcohol. In Counts II and III of the complaint, Murray seeks to hold Stein & Day liable under an agency theory for the statements that Bailey made on television in promotion of the book.

Defendants contend that the book's arrest-related statements are statutorily privileged as a fair and true report of Murray's official arrest report; that the statements about the trial are not defamatory because they are merely expressions of opinion; that prior publicity about Murray's arrest renders him libel-proof; and that Stein & Day is not vicariously liable for the statements made on television. Finally, Defendants argue that there is no actual malice.

---

**1.** Bailey writes: "In early 1981, prosecutor Larry Murray was arrested for operating a motor vehicle under the influence and for assault and battery of a police officer." Bailey, *How to*

## II

### A

■ Plaintiff and defendants dispute the proper standard to be applied on a motion for summary judgment. Plaintiff argues that the standard of review on a motion for summary judgment in a defamation action is whether a genuine issue of material fact exists with respect to whether the statements were published with actual malice. Plf.'s Opposition to Motion for Summary Judgment at 27. Stein & Day argues that it is entitled to summary judgment unless plaintiff can show with convincing clarity that the statements were published with actual malice. Def. Stein & Day's Motion for Summary Judgment at 66. Defendant is correct.

In *Trans World Accounts, Inc. v. Associated Press*, 425 F.Supp. 814, 822 (N.D. Cal.1977), this Court dismissed a libel claim on summary judgment, holding that "it is the plaintiff's burden to show, by evidence of 'convincing clarity,'" that the defendants knew their reports were false, or were aware of their probable falsity. *See also Guam Federation of Teachers, Local 1581 v. Ysrael*, 492 F.2d 438 (9th Cir.1974), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974), and *Yiamouyiannis v. Consumers Union of United States, Inc.*, 619 F.2d 932, 940 (2d Cir.1980), *cert. denied*, 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980). Moreover, even if plaintiff were required to meet only the lower standard that he has suggested, he would have been unable to meet that standard with the evidence he has presented here.

■ It is well established that the First Amendment prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false, or with reckless disregard of whether it was false or

---

*Protect Yourself Against Cops in California and Other Strange Places* (1982) at 60 (hereinafter cited as "The Book")

not. *New York Times Co. v. Sullivan*, 376 U.S. 254, 276, 279–80, 84 S.Ct. 710, 723, 725–26, 11 L.Ed.2d 686 (1964). There is no dispute here about plaintiff's status as a public official, nor is there any dispute about Stein & Day's lack of actual knowledge about the charges that Bailey made in his book. Thus, Stein & Day's liability turns on whether it published with "reckless disregard," or stated somewhat differently, whether it entertained serious doubts as to the truth of the book and published with "a high degree of awareness of probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

■ A publisher's failure to make an independent investigation of a story, even when the publisher is aware of the possible bias of its source, does not amount to reckless disregard in the absence of serious doubts about the story's truthfulness. In *St. Amant*, the defendant, a candidate for public office, made allegedly defamatory statements about the plaintiff sheriff during a televised campaign speech. For the statements' accuracy, the defendant relied exclusively on one possibly hostile source, a union member engaged in a serious struggle for control of the union. The statements dealt with the plaintiff's relationship to an incumbent union official, and alleged criminal conduct. The Supreme Court held that the defendant's reliance on this one source and his failure to investigate did not reach the level of reckless disregard.

Similarly in *Hotchner v. Castillo-Puche*, 551 F.2d 910 (2d Cir.1977), the court held that Doubleday & Company's failure to independently investigate defamatory statements about A.E. Hotchner that were attributed by author Castillo-Puche to Ernest Hemingway did not amount to reckless disregard. The court stated that the author's allegations were not of such an extraordinary nature as would suggest a high probability of falsity. More significantly, the court noted that "[w]hile Castillo-Puche's denunciations of Hotchner were sufficient to put Doubleday on notice of Castillo-Puche's animosity toward Hotchner, there

was no reason to believe that Castillo-Puche had never really observed Hotchner. Knowledge of an author's ill-will does not by itself prove knowledge of probable falsity." *Id.* at 913–14. Thus, a failure to investigate does not amount to reckless disregard even where hostility can reasonably be suspected of the author or speaker. *See also Loeb v. New Times Communications Corp.*, 497 F.Supp. 85 (S.D.N.Y.1980).

In essence, plaintiff argues that Stein & Day's failure to investigate Bailey's accounts of plaintiff's arrest and improper prosecutorial conduct amounts to a reckless disregard of the truth. Plaintiff claims that a duty to investigate arose from the fact that the book made serious charges that could foreseeably result in great harm to the plaintiff, and that the book displayed an evident antagonism toward the prosecutor. Plaintiff bolsters his argument by suggesting that the publisher was on notice that he contested his guilt, and that the publisher had ample time to conduct research before publication. Had Stein & Day investigated, plaintiff claims, it would have concluded that he did not suborn perjury because the book's versions of the opening statement and police testimony are substantially inaccurate. Finally, plaintiff argues that that actual malice is further demonstrated by the publication of a soft-cover edition of the book in which additional language was quoted verbatim from plaintiff's arrest report.

■ Reckless disregard is a very high standard that simply is not met here. The law did not require Stein & Day to make an independent investigation of Bailey's accusations. Nonetheless, the publisher acted responsibly by requiring the author to confirm his statements. Bailey was asked about Murray's arrest, and he told Mr. Stein that he had relied upon the arrest report in making his charges. Bailey Deposition at 201–02. Furthermore, Bailey "represented and warranted" in the publishing contract that the book was not libelous. Stein Declaration in Support of Motion for Summary Judgment at 9, 12, 17.

Not only was Stein & Day's failure to investigate not reckless, it was not even unreasonable. The publisher relied on Bailey as the best source of information for the events contained in the book because Bailey was present throughout the trial proceedings and could be expected, as an experienced trial attorney, to render a knowledgeable account.

The two additional factors on that plaintiff relies in support of his assertions of recklessness are similarly unconvincing. Plaintiff has cited no case which has *held* that the "heat" of the report is to be considered in determining the extent of the duty to investigate. The references in *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir.1969), *cert. denied*, 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970), are clearly *dicta*. Furthermore, plaintiff admits that as soon as the mistakes about the arrest were discovered, changes were made to the soft-cover edition. The decision to quote more extensively directly from the arrest report can hardly be considered evidence of malice.

**B**

On November 8, 1982, Bailey appeared on two San Francisco television stations (KRON–TV and KGO–TV) while conducting a promotional tour for his book. On these shows, Bailey accused Murray of having been convicted of drunk driving, though in truth, Murray had been arrested for being under the influence of alcohol in a public place and resisting arrest.[2] No conviction was obtained.[3] Rather, Murray was diverted for this offense. Murray argues that Stein & Day is liable for Bailey's statements because it paid to have the tour arranged, discussed Bailey's presentation with Bailey, and benefited by the promotion of the book: "It is reasonable to conclude from the evidence that Stein & Day should have known that Bailey would emphasize to the public Murray's alleged drunken driving, which Stein & Day also emphasized on the flap. Therefore, Stein & Day should be held vicariously liable for Bailey's defamations on television." Plf.'s Opposition to Motion for Summary Judgment at 56.

■ Plaintiff cannot recover in this action without proving each defendant acted with actual malice as to each purported defamation. *Hoffman v. Washington Post Co.*, 433 F.Supp. 600, 605 (D.D.C.1977), *aff'd*, 578 F.2d 442 (D.C.Cir.1978). As the Arizona Supreme Court stated in *Phoenix Newspapers, Inc. v. Church*, 24 Ariz.App. 287, 537 P.2d 1345, 1360 (1975), *appeal dismissed*, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 759 (1976), "We therefore start with the premise that under *Sullivan*, apart from the application of *respondeat superior*, an individual cannot be held liable unless the jury finds that the individual himself has been actuated by actual malice (knowledge of falsity)."

■ The stringent standards required by the First Amendment make application of an agency theory inappropriate. However, even if an agency theory were generally proper, it would be improper on the facts here. The gravity of Bailey's television accusations exceeded that of any that were published. Plaintiff has put forward no evidence to suggest that Stein & Day could expect that Bailey would accuse Murray of a *conviction* for drunk driving. The nexus is simply too weak to support the defamation claim. Thus, summary judgment in favor of Stein & Day and against Murray is granted on all claims.

2. On November 8, 1982, Bailey stated on KGO–TV, "Could you explain to me why San Francisco sent a man convicted of drunk driving to prosecute this case? What kind of a charade was this?" *See* Second Amended Complaint ¶ XXVI.

3. As stated in § 1001.1 of the California Penal Code, "pretrial diversion refers to the procedure of postponing prosecution of an offense filed as a misdemeanor either temporarily or permanently at any point in the judicial process from the point at which the accused is charged until adjudication." Section 1001.3 of the California Penal Code Code provides that an admission of guilt is not a prerequisite for admission into the diversion program, and § 1001.7 states that criminal charges shall be dismissed at the end of the period of diversion.

### III

As with his claims against Stein & Day, plaintiff challenges three categories of accusations made by Bailey. First, Murray challenges Bailey's allegations of prosecutorial misconduct. He then challenges statements in the book that accuse Murray of having been arrested for drunk driving and assault and battery. Finally, Murray contests Bailey's television statements that accuse Murray of having been convicted of these offenses. In this motion for summary judgment, Bailey argues that he cannot be held liable because his statements are privileged, and that even if these privileges do not apply, summary judgment must be granted because Murray cannot demonstrate that any statement was made with actual malice.

### A

■ We will deal with the claims of privilege preliminarily. Plaintiff argues that Bailey's assertions of plaintiff's prosecutorial incompetence are actionable but, to the extent that these assertions are mere opinion, plaintiff cannot state a claim in defamation. To prevail in defamation, plaintiff must prove the challenged statements are false; statements of opinion are neither true nor false. As the Supreme Court noted in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974): "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."

■ In *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781 (9th Cir.1980), the Ninth Circuit held that statements are protected opinion when they (a) convey pertinent information to the public about a matter of public interest, (b) are made in the course of a public debate or similar circumstances, and (c) are phrased in cautionary language. Many of the comments about Murray's prosecution of the case clearly state Bailey's opinion that the case was poorly tried by the prosecutor.[4] All of the comments pertaining to Murray's incompetence fall clearly within the *Information Control* test: they are concerned with the question of the state's proper exercise of its penal power in an area of particular current interest, drunk driving, and are clearly expressed as opinion. Furthermore, they are concerned with the competence of a public official, and thus are especially worthy of protection under the First Amendment. *See Botos v. Los Angeles County Bar Association*, 151 Cal.App.3d 1083, 199 Cal.Rptr. 236 (1984). Finally, many of these comments simply are not defamatory.

### B

Legally distinguishable from these claims of prosecutorial incompetence are claims of prosecutorial illegalities. Plaintiff contends that certain language in Bailey's book charges him, by way of innuendo, with willfully procuring perjured testimony, with suborning perjury, and with attempting to violate Bailey's right to a fair trial by engaging in dishonest conduct. This debate centers on an alleged contradiction between Murray's opening statement and the evidence that Murray elicited from police officers. According to Murray, Bailey has charged him with orchestrating a reversal of testimony in response to the trial judge's ruling that police officers could not properly testify on the issue of Bailey's impairment, but only on his drunk-

---

4. The challenged statements concerning Murray's prosecutorial abilities include the following remarks:

"Murray's response was typical of a young prosecutor who sees a chance to try a 'big' case." The Book at 31.
"Murray knew unquestionably that he was assuring a trial, a decision he may have come to regret." *Id.* at 32.

"Larry Murray shocked both the defense and several judges by announcing that it would last 'two weeks and possibly more' * * *. Good lawyers can try most murder cases in less than two weeks." *Id.* at 32.
"Had Murray done his legal homework correctly, he probably wouldn't have tried that particular strategy." *Id.* at 37.

enness. Bailey argues that the book does not accuse Murray of suborning perjury because the statements are not about Murray, and no clear reference is made to the subornation of perjury.

 Preliminarily, it is important to note that accusations of criminal activity or personal dishonesty are not sheltered by the normal First Amendment protection for opinion. *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 63 (2d Cir.1980); *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 131 Cal.Rptr. 641, 552 P.2d 425 (1976). If Bailey has accused Murray of orchestrating perjury and attempting to influence witnesses to change their stories, the fact that these statements take the form of opinion does not require the granting of summary judgment.

 However, plaintiff must demonstrate to a certainty that the challenged language is "of and concerning" him. *See Barger v. Playboy Enterprises, Inc.*, 564 F.Supp. 1151, 1153–55 (N.D.Cal.1983), *aff'd mem. op.*, 732 F.2d 163 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 175, 83 L.Ed.2d 110; *Noral v. Hearst Publications, Inc.*, 40 Cal.App.2d 348, 360, 104 P.2d 860, 863 (1940). Plaintiff cites several passages that he claims allow for an inference of criminal conduct on his part.[5] In none of these cited passages does Bailey accuse Murray of suborning perjury. At most, there is an accusation that perjury was committed by the testifying officers. It cannot be seriously stated that the mere reference to an orchestration would be con-

strued by the ordinary reader as an accusation that Murray suborned perjury.

 Similarly inactionable is Bailey's statement that "once a prosecution gets rolling, police and prosecutors are often reluctant to let truth become an obstacle." The Book at 41. There simply is no allegation that *Murray* in this particular instance, or for that matter ever, obstructed the truth. Although plaintiff is a prosecutor, general statements about a large class of people are not actionable by individual members of the class. *See Barger, supra; Noral, supra;* and *Mullins v. Brando*, 13 Cal.App.3d 409, 91 Cal.Rptr. 796 (1970), *cert. denied, Brando v. Coffman*, 403 U.S. 923, 91 S.Ct. 2231, 29 L.Ed.2d 701 (1971). Thus, plaintiff has failed to show that Bailey defamed him by these comments.

### C

Bailey further contends that the book's statements about Murray's arrest are not actionable because fair and true reports of arrest records are privileged under § 47(4) of the California Civil Code, which provides in part that a privileged publication is one made

"By a fair and true report in a public journal of (1) a judicial, (2) legislative or (3) other public official proceeding, or (4) of anything said in the course thereof, or (5) of a verified charge or complaint made by any person to a public official,

---

5. For example, when writing about the prosecutor's reaction to the judge's ruling that the police would not be permitted to testify about impairment, Bailey states:

"Murray was beside himself, quite understandably. He very specifically had committed himself to the jury in his opening statement saying that none of the witnesses for the prosecution could claim that I was drunk. Now here he was with the judge about to rule, it seemed, that the only thing left that they *could* say was that I had been sober. That would not be terribly helpful to the prosecution's case. Murray tried in vain to argue that Sergeant MacKenzie was an expert, but got nowhere. He was left with a difficult dilemma. And then a miraculous thing happened.

All of these police officers, starting with Sergeant MacKenzie, who must have told Murray before trial that I was *not* drunk, as Murray had just told the jury, now in the face of sudden need 'remembered' that I *was* drunk, thus saving the day. In the face of such remarkable testimonial flexibility by these police witnesses, one wonders whatever happened to the laws forbidding perjury. * * *

Curious, and a strong indication tha this testimony was orchestrated and not grounded in reality, was that as we listened to the testimony of one police witness after another, covering a span of three hours, there was no change whatever in my condition." The Book at 42–43.

upon which complaint a warrant shall have been issued."

Plaintiff argues that the privilege does not apply because the book's account is not "fair and true" as a matter of law and because fairness and truth must be determined by the jury. Plf.'s Opposition to Motion for Summary Judgment at 20.

 A "fair and true" report is one that "captures the substance" of the proceeding "measured by the nature and probable effect * * * on the mind of the average reader [and viewer]." *Kilgore v. Younger*, 30 Cal.3d 770, 777, 180 Cal.Rptr. 657, 661, 640 P.2d 793, 797 (1982), cited in *Reeves v. American Broadcasting Companies, Inc.*, 719 F.2d 602 (2d Cir.1983). Plaintiff argues that the book accuses him of having been arrested for drunk driving and assault and battery, and that this is substantially false because he was charged with being intoxicated in a public place and resisting arrest. Although these are significant differences standing in isolation, they are not significant when properly placed in context. Both the arrest report and the book state that two police officers found Murray intoxicated at 2:00 a.m., lying on the floor of his automobile, which was parked in the middle of the intersection; that they only discovered him when they attempted to tow the car; and that he hit the ignition and the car lurched forward four feet, striking the two police officers. Thus, under the standard set forth in *Hayward v. Watsonville Register-Pajaronian and Sun*, 265 Cal.App.2d 255, 71 Cal.Rptr. 295 (1968), the account is "true" since the "substantial imputations" are true: "[T]he slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently than the actual truth would." 265 Cal.App.2d at 262, 71 Cal.Rptr. 295. In this instance, the technical errors in legal nomenclature are of no legal consequence. *Ricci v. Venture Magazine, Inc.*, 574 F.Supp. 1563 (D.Mass. 1983); *Simonson v. United Press International, Inc.*, 654 F.2d 478 (7th Cir.1981).

Plaintiff's argument that summary judgment is inappropriate when questions of fairness and truth exist is belied by *Hayward* and *Reeves*. Reliance upon *Handelsman v. San Francisco Chronicle*, 11 Cal. App.3d 381, 90 Cal.Rptr. 188 (1970), is also misplaced. In that case, the court was careful to distinguish the situation of determination of what questions should be presented to the jury at the conclusion of a trial from those "where the matter was solely one of law because of the procedural posture of the case." Summary judgment is proper once the court determines that the privilege does in fact exist. *Id.* at 386, 90 Cal.Rptr. 188.

### D

 On November 8, 1982, while appearing on two San Francisco television stations (KRON–TV and KGO–TV) in promotion of his book, Bailey accused Murray of having been convicted of drunk driving. Bailey once again asserts that statements made on television are covered by the privilege afforded to fair and true reports of judicial proceedings. Under the standard reviewed directly above, this argument is unconvincing. The television statements, unlike the statements contained in the book, are of a different complexion than the actual truth, because the statements made on television were not set in context. The viewer, unlike the reader, could not be expected to understand that the car had merely lurched forward. Thus, there is a substantial difference between the television comments and the truth, between a conviction of drunk driving and being arrested and subsequently diverted for being drunk in an automobile that lurched forward four feet. In the former, an individual places other members of society in serious risk of their lives; in the latter, one creates no substantial risk for others, and the opprobrium of society is not brought to bear upon the defendant. Thus, there is a substantial difference between Bailey's television comments and the truth.

## E

■ Having found that Bailey's television statements about Murray's alleged conviction are not protected as "fair and accurate" reports, the Court must consider whether these statements were made with actual malice. Bailey argues that he did not act recklessly because his beliefs about the plaintiff's drunk driving were reasonably founded: these beliefs rested on Bailey's understanding that Murray could be charged with drunk driving and assault and battery under California law; statements by Bailey's defense counsel, Mr. Johnson, that Murray had been arrested for driving under the influence; news stories published during the *People v. Bailey* trial; and the factual description contained in Murray's arrest report. Bailey admits that he "reviewed plaintiff's arrest report shortly before the April 1982 trial and then wrote about the arrest in his May 1982 tentative outline for an account of the trial, which language generally is what appears in the Book." Bailey Declaration in Support of Motion for Summary Judgment ¶¶ 6–9, 11. The arrest report that Bailey reviewed at the time of his trial states in full capitalization on the fourth line from the top that the charge was "UNDER THE INFLUENCE OF ALCOHOL IN A PUBLIC PLACE" AND "RESISTING ARREST." Although the first two letters of "under" and "resisting" are missing from the only copy of the report produced by Bailey's attorneys to Murray's, a cursory examination of the report would have revealed the actual charges.

Bailey argues that he had "no duty to investigate beyond his review of the facts of the arrest report, because a failure to investigate is not reckless disregard." Def. Bailey's Points and Authorities in Support of Summary Judgment Motion at 15. This is a correct statement of the law, but a totally misguided argument given the contents of the arrest report. Defendant admits that he had in fact seen an arrest report that explicitly stated that the charges were not as he characterized them; indeed, Bailey stated that he relied heavily on the factual assertions of that arrest report in making his allegations. It would be unjust and nonsensical to allow the defendant to rely on the report for certain purposes and to ignore it for others.

None of the cases Bailey cites involves an instance where the alleged defamer had actually seen "hard evidence" that rebutted his allegations. In *Sullivan, supra,* the Supreme Court held that failure to check one's own files was not reckless disregard. In *Dacey v. Florida Bar, Inc.,* 427 F.2d 1292 (5th Cir.1970), the court held that where the author had never even read the official record concerning the plaintiff, the defendant was not reckless in writing that the plaintiff was convicted of the unauthorized practice of law, when he was merely subject to a civil injunctive proceeding. This case involves a substantially different situation that might well allow the jury to find by clear and convincing evidence that actual malice existed.

## IV

The Supreme Court in *Sullivan* took note of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). The breadth of the license that the First Amendment affords to the press may lead to harsh results in certain instances. Individuals who have been negligently defamed are sometimes left without compensation.

This unfortunate situation is justified by three separate factors. First, public personalities have chosen to thrust themselves into the public spotlight; in seeking the benefits of this situation, they must also assume the burdens that accompany a loss of anonymity. As Mr. Justice Powell noted in *Gertz, supra,* 418 U.S. at 344, 94 S.Ct. at 3009: "An individual who decides to seek governmental office must accept certain consequences of that involvement in public affairs. He runs the risk of closer public

scrutiny than might otherwise be the case." Second, public personalities, by virtue of their positions, are able to respond easily to criticism as it arises. Third, and most important, a vigorous press is a prerequisite of a vigorous society, and the principles encapsulated in the First Amendment, as expounded by *Sullivan* and its progeny, are the prerequisite of a vigorous press. These principles "represent significant protections for the lifeblood of a free, fair, responsive, and responsible press. To be independent of political influence, to inform the reading public on matters of concern and interest, and to perform its important, yet informal task \* \* \* of light-shedding on the activities of government officials, the press must be safeguarded from crippling libel suits, brought to punish those who exercise free speech and to deter others by chilling the atmosphere, from expressing disagreement in public forums." *Rinaldi v. Holt, Rinehart, & Winston, Inc.*, 42 N.Y.2d 369, 385, 397 N.Y.S.2d 943, 952, 366 N.E.2d 1299, 1308 (1977), *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

In recent years, the public has come to fear the power of the national and international press; this distrust of the media has been manifested by frequent verdicts for plaintiffs accompanied by huge awards. Certainly, the power of the press is not a panacea for societal ills, for the concentration of power in the press itself is quite problematic. But the troubles created by the concentration of power in a national press are necessary ones for, without this power, the press would lack the fortitude to combat even more troubling concentrations of power in other areas of our society. The Supreme Court has decided that the actual malice standard is adequate to minimize the risks created by the power of the media in light of society's need for scrutiny by the press. It has concluded that excessive self-censorship by publishing houses is to be feared more than the instances of injustice occasioned by a relatively unfettered press. In short, the First Amendment commands us to endure the risks that accompany a strong and vigorous press so

that we need not endure the tyranny that might accompany its absence. Applying these principles to the present case,

IT IS HEREBY ORDERED that:

1. Defendant Stein & Day's motion for summary judgment is GRANTED.

2. Defendant Francis Lee Bailey's motion for summary judgment is GRANTED as to all libel claims, and DENIED as to all slander claims.